WELLINGTON et al., Appellants v. STATE et al., Respondents

(238 N.W.2d 499)

(File Nos. 11649, 11655. Opinion filed February 13, 1976)

May, Johnson & Burke and Derald W. Wiehl, Woods, Fuller, Shultz & Smith, and William P. Fuller, Sioux Falls, for petitioners and appellants.

Gene Paul Kean, State's Atty., Minnehaha County, Sioux Falls, William J. Janklow, Atty. Gen., Pierre, for respondents.

WINANS, Justice.

These two cases present to this Court but one question, and that a matter of first impression before us. The substance of the issue is whether or not documents accompanying a demand for extradition must demonstrate probable cause to believe that an offense was committed in the demanding state and that it was committed by those sought to be extradited. We have considered the record in these cases, the relevant arguments of all counsel and the current state of the law in federal and state jurisdictions. Noting an apparent division of authority on the subject, we have

carefully examined the opinions handed down by courts on both sides of the matter. It is our conclusion that it is not essential to show probable cause in demanding extradition in the same manner in which it must be shown for an ordinary arrest warrant. We therefore affirm the decision of the circuit court quashing the writ of habeas corpus, thus permitting the contested extraditions.

Appellants in this case had been arrested at Sioux Falls, South Dakota, in the late fall of 1974 and were charged with being fugitives from justice from the State of Minnesota. On December 30, 1974, in response to the application of the County Attorney of Stevens County, Minnesota, the Minnesota Governor issued a demand to the Governor of South Dakota for their extradition. On January 2nd of 1975 Governor Kneip authorized their remandment and executed Governor's warrants of arrest. After several continuances a joint extradition hearing was held on January 15, 1975, before a Magistrate of the Second Judicial Circuit at Sioux Falls. During this hearing the State of South Dakota submitted to the court the Governor's arrest warrants, the Minnesota Governor's requisition papers, and all the documents thereto attached including two criminal complaints, two arrest warrants and supplementary affidavits. In addition, the State called a witness who gave testimony regarding the sale of various objects by Appellants to him, which objects the State attempted to link with goods the Appellants are charged with stealing. The magistrate determined that sufficient factual and legal basis existed for extradition of Appellants.

Subsequently a habeas corpus hearing was held before the Circuit Court, Minnehaha County. At that hearing the State adopted a position that the only two matters to be reviewed by the Court were whether or not a crime had been committed in Minnesota and whether or not Defendants were the parties named in the warrants. The Court found that "there is sufficient probable cause existing from the record ... to warrant enforcement of the Order by the Magistrate extraditing the Petitioners." The writ was quashed and Defendants brought this appeal.

It is undisputed that in the area of extradition federal law

is controlling and that any state regulation on the subject is but supplemental to the federal law and serves only to facilitate it.

Article 4, § 2 of the United States Constitution provides in part that:

"A person charged in any state with treason, felony or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

In order to implement this provision Congress passed the Federal Rendition Act, now found at 18 U.S.C. § 3182 (1964).[1] This act fails of itself to spell out the exact procedures to be used by the states in apprehending and returning fugitives. Further, this Act does not elaborate on the meaning of "charged" in the constitutional article nor does it set up standards with which an affidavit must comply. To fill in the gaps most states have adopted the Uniform Criminal Extradition Act.[2] In this state that Act is found at SDCL 23-24-1 to 23-24-34. SDCL 23-24-2, reads:

"Subject to the provisions of this chapter, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this

---

1. *"Fugitives from State or Territory to State, District or Territory.*—Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged. (June 25, 1948, c. 645, § 1, 62 Stat. 822.)"

2. See "Interstate Rendition and the Fourth Amendment," 24 Rutgers Law Review 551 (1970).

state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

SDCL 23-24-3, *inter alia*, provides that

"[t]he indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand."

Appellants argue that the key word in the extradition provisions of the U.S. Constitution is "charged." They contend that prior to Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, and Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, a person stood sufficiently charged of a crime for purposes of extradition once the purely formal acts of filing a complaint, information and/or affidavit had been satisfied. However, they argue, with the advent of Wolf and Mapp federal and state courts have held that the charging documents issued by a demanding state do not succeed in "charging" a crime as required by the U.S. Constitution unless they set forth facts which justify a finding of probable cause pursuant to the requirements of the Fourth Amendment of the Federal Constitution. For this position they rely heavily on Kirkland v. Preston, 1967, 128 U.S.App.D.C. 148, 385 F.2d 670. In that case the District of Columbia Court of Appeals, through Judge J. Skelly Wright, said:

"There is no reason why the Fourth Amendment, which governs arrests, should not govern extradition arrests. Under its familiar doctrine arrests must be preceded by a finding of probable cause. When an extradition demand is accompanied by an indictment, that document embodies a grand jury's judgment that constitutional probable cause exists. But when the extradi-

tion papers rely on a mere affidavit, even where supported by a warrant of arrest, there is no assurance of probable cause unless it is spelled out in the affidavit itself. Thus Fourth Amendment considerations require that before a person can be extradited on a Section 3182 affidavit the authorities in the asylum state must be satisfied that the affidavit shows probable cause."

Appellants insist that in the case of an affidavit made before a magistrate, which is the situation before us, probable cause must be shown and it must be shown on the face of the document. It is their view that for purposes of satisfying this probable cause determination by the asylum state, an arrest warrant is ineffective in the asylum state if it merely contains a provision to the effect that it was issued upon a probable cause showing made on the strength of additional oral information revealed to a magistrate under oath but not embodied within the particular requisition document.

In the cases before us two separate criminal complaints had been issued, one for each of the defendants. Apart from the filling in of date, place and ownership of the property taken, the language in each complaint duplicates the text of the Minnesota theft statute in question. Each complaint asserts that it was made upon information resulting from the affiant's own investigation. They were subscribed and sworn to before a Minnesota county judge who issued arrest warrants for Defendants the same day. The arrest warrants recite that the court had found probable cause for their issuance.

On December 26, 1974, two supplementary form affidavits were made and filed stating that:

"the circumstances and facts showing the commission of the crime charged in the complaint[s] against [Appellants] are as follows: On 9-10-74, two automobile short blocks and one battery were stolen from Libby Wholesale, Morris, Minnesota, and were reported stolen on 9-12-74 by the owner. The items were sold at Starbuck Iron Company, Starbuck, Minnesota, on 9-11-74.

The individuals selling the items have been identified as George Richard Wellington and Neal LeeRoy Wellington, and said individuals have been identified as being in the Morris, Minnesota area 9/9/74-9/12/74. At the time the accused committed the crime aforesaid [they were] in the state of Minnesota and to avoid prosecution [they] fled from the state of Minnesota."

At the same time as these affidavits were executed the county judge issued two form certificates stating that affiant, in the judge's opinion, was a reputable person to be believed and that the facts sworn to by him presented a proper cause for requisition.

The affidavits in the cases before us are but conclusory in language. If we were to follow the Kirkland holding and to align ourselves with state jurisdictions such as New York which also follow Kirkland, it would be difficult to affirm the circuit court, at least on the basis of the affidavits alone. See People ex rel. Cooper v. Lombard, 1974, 45 A.D.2d 928, 357 N.Y.S.2d 323, Supreme Court, App.Div. Such, however, is not our view.

In our view the holding of the United States Supreme Court in In Re Strauss, 1905, 197 U.S. 324, 25 S.Ct. 535, 49 L.Ed. 774, is still good law. There Mr. Justice Brewer said for the Court:

"Under the Constitution each state was left with full control over its criminal procedure. No one could have anticipated what changes any state might make therein, and doubtless the word 'charged' was used in its broad signification, to cover any proceeding which a state might see fit to adopt by which a formal accusation was made against an alleged criminal. In the strictest sense of the term a party is charged with crime when an affidavit is filed, alleging the commission of the offense, and a warrant is issued for his arrest; and this is true whether a final trial may or may not be had upon such charge."

Continuing, the Court made a notable distinction which clearly

sets extradition arrests apart from a seizure protected by the Fourth Amendment:

> "[E]xtradition is a mere proceeding in securing arrest and detention. An extradited defendant is not put on trial upon any writ which is issued for the purposes of extradition, any more than he is upon the warrant which is issued by the justice of the peace directing his arrest."

In answering the allegation that sometimes persons are wrongfully extradited as in the case where a creditor may wantonly swear to an affidavit charging a debtor with obtaining goods under false pretenses the Court said that:

> "[w]hile courts will always endeavor to see that no such attempted wrong is successful ... care must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt."

Essentially, Appellants have demanded that the State of Minnesota show probable cause in these cases on the face of the affidavits made before the Minnesota magistrate because, in their view, "it is incumbent upon the asylum state to make its own independent probable cause determination." However, we are in agreement with the Illinois Supreme Court in People ex rel. Kubala v. Woods, 1972, 52 Ill.2d 48, 284 N.E.2d 286, when it stated that:

> "the scope of inquiry in [an extradition] proceeding to test the validity of a rendition warrant is limited to three questions: (1) is the accused substantially charged with a crime under the laws of the demanding State; (2) is the person in custody the person charged; (3) is he a fugitive from justice."

There that court held that in the case before it even though the affidavits did not show probable cause they were affidavits made

before a magistrate and complied with 18 U.S.C. § 3182 and with section 3 of the Uniform Extradition Act. They were therefore sufficient to support the rendition warrant.

The Indiana Supreme Court has taken a similar position. In Bailey v. Cox, 1973, Ind., 296 N.E.2d 422, that body said that it was "not impressed with the reasoning of Kirkland v. Preston, [citation omitted] cited by the Appellant which states that the asylum state may review the judgment or finding of probable cause in the demanding state." It is that court's view that

"under the Uniform Criminal Extradition Act, the only issue for the governor of the asylum state is the identity of the fugitive. No inquiry may be made into the merits of the criminal charge or whether there is probable cause for the initiation of criminal proceedings in the demanding state. Those are all evidentiary issues to be heard and tried in the demanding state, not in a foreign jurisdiction."

Only last year the Supreme Judicial Court of Massachusetts dealt again with the extradition question in In re Ierardi, 1975, Mass., 321 N.E.2d 921, a case involving an affidavit accompanying an information. That court stated:

"[w]hether there is probable cause to arrest can be fully litigated before the courts of the demanding State for 'in delivering up an accused person to the authorities of a sister state ... [we] are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the federal Constitution ...' Biddinger v. Commissioner of Police, 245 U.S. 128, 133, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917). In addition, principles of comity operate against inquiry into the criminal procedures of the demanding State."[3]

---

3. This case appears to have subsequently been considered in the federal courts and a contrary result there obtained. See Ierardi v. Gunter, CA 1, 528 F.2d 929 (1976), 18 Cr.L. 2380.

██ Because we are in agreement with In Re Strauss, supra, and with the courts of Illinois, Indiana and Massachusetts on this question in the foregoing cases and with those jurisdictions which support a similar view we hold today that while it is desirable it is not necessary for the documents accompanying a governor's demand for extradition to show probable cause in the sense which Appellants would require. Such is demanded neither by the U.S. Constitution, federal law nor our state statutes. Extradition is a summary executive procedure whose effect is essentially to enlarge the territorial area for lawful arrest, the asylum jurisdiction being added to the demanding jurisdiction. In Re Maldonado, 1973, Mass., 304 N.E.2d 419. By our holding the Appellants have lost none of their rights, for the need to show probable cause for their arrest must still be demonstrated at the proper stage in the Minnesota proceedings.[4] Should that state there fail to meet its burden the usual remedies continue to be available to Appellants.

The Order of the Circuit Court is affirmed.

All the Justices concur.

██

██

---

4. See Minnesota Rules of Criminal Procedure, Rule 3, Warrant or Summons Upon Complaint, 3.01 to and including 3.04.