Neal LeRoy **WELLINGTON, Petitioner,**

v.

The **STATE OF SOUTH DAKOTA, and its officers and agents, et al., Respondents.**

George R. **WELLINGTON, Petitioner,**

v.

The **STATE OF SOUTH DAKOTA, and its officers and agents, et al., Respondents.**

Nos. CIV. 76–4021 and CIV. 76–4023.

United States District Court, D. South Dakota, S. D.

May 10, 1976.

William P. Fuller, Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., appeared in behalf of the petitioner Neal LeRoy Wellington.

Derald W. Wiehl, May, Johnson & Burke, Sioux Falls, S. D., appeared in behalf of the petitioner George R. Wellington.

William J. Janklow, Atty. Gen., State of South Dakota, Pierre, S. D., and Gene Paul Kean, Minnehaha County State's Atty., Sioux Falls, S. D., appeared in behalf of the respondents.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Petitioners, Neal LeRoy Wellington and George R. Wellington, have petitioned the Court pursuant to 28 U.S.C. Sec. 2241, *et seq.*, for a writ of habeas corpus. Both brothers were arrested in Sioux Falls, South Dakota, on complaints charging them with being fugitives from justice from the State of Minnesota. The complaints charged Petitioners with committing grand larceny in Minnesota and subsequently fleeing to South Dakota. At a consolidated hearing before a Magistrate of the Second Judicial Circuit, the State of South Dakota presented the governor's arrest warrants and appertaining documents. The testimony of one witness who managed a scrap metal company in Minnesota was also received. The substance of his testimony was that he had issued checks to "Dick" Wellington (later identified as George R. Wellington) for several loads of scrap iron.

This testimony was restricted to the identification of Petitioners. When defense counsel attempted to cross-examine the witness on the origin of the scrap which the Wellingtons had sold, the States Attorney objected, stating that the only purpose for the hearing was to identify the Wellingtons as the people wanted in Minnesota. This objection was sustained. (T. 17). There was no evidence presented which linked the Petitioners to larceny of the scrap items. There was no evidence presented to establish that the scrap items were stolen. If the allegedly stolen items carried any identifying characteristics, they were not disclosed at the Magistrate's hearing.

The extradition papers included two complaints framed in the language of the Minnesota larceny statute, two arrest warrants, cross certifications of the state officials involved and supplementary affidavits. On the basis of these documents and the testimony of the one witness, the Magistrate authorized extradition. That determination was unsuccessfully challenged in Circuit Court, Minnehaha County. Petitioners next appealed to the State Supreme Court, which held that "while it is desirable it is not necessary for the documents accompanying a governor's demand for extradition to show probable cause . . .". *Wellington v. State*, S.D., 238 N.W.2d 499, 503 (1976).

Petitioners have exhausted available state remedies as required pursuant to 28 U.S.C. Sec. 2254.

These petitions raise the single issue whether extradition warrants necessitate a showing of probable cause under the requirements of the Fourth and Fourteenth Amendments to the Constitution of the

United States. It is well settled that proceedings for interstate extradition of criminals are controlled by federal law. *Innes v. Tobin*, 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916); *Smith v. State of Idaho*, 373 F.2d 149 (9th Cir. 1967). Article 4, Sec. 2, of the United States Constitution provides in part:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall, on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

As with most other provisions of the Constitution, this skeletal directive was to be fleshed out by statute or case law. The Second Congress in 1793 enacted the basic federal statute on interstate extradition, 1 Stat. 302, which still survives in all significant respects via 18 U.S.C. Sec. 3182.[1] That section does little to shed light on the meaning of the word "charged". South Dakota statutes, SDCL (1967) 23–4, *et seq.*, cross reference to Article 4, Sec. 2, and 18 U.S.C. Sec. 3182. *See* SDCL (1967) 23–24–2. However, these statutes similarly fail to specify what criteria are to be employed in measuring extradition affidavits.

After discussing the conflicting viewpoints prevalent in this area of the law, the South Dakota Supreme Court declined to hold that probable cause must be established and limited the inquiry in extradition proceedings to three questions: (1) is the accused substantially charged with a crime under the laws of the demanding State; (2) is the person in custody the person charged; (3) is he a fugitive from justice. In so holding, the Court aligned itself with the State courts of Illinois; *People v. Woods*, 52 Ill.2d 48, 284 N.E.2d 286 (1972); Indiana; *Bailey v. Cox*, 296 N.E.2d 422 (1973), and Massachusetts; *In re Ierardi*, 321 N.E.2d 921 (1975). The *Ierardi* decision has since been reversed by the United States District Court for the District of Massachusetts in a decision handed down on June 19, 1975. That reversal was affirmed on appeal to the First Circuit Court of Appeals, *Ierardi v. Gunter*, 528 F.2d 929 (1st Cir. 1976).

In passing upon this issue, it is significant that the South Dakota Supreme Court omitted any reference to a very recent Supreme Court decision concerning probable cause, *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Gerstein* the Court discussed the importance of the detached judgment of a neutral magistrate and concluded that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U.S. at 114, 95 S.Ct. at 863, 43 L.Ed.2d at 65. Whether that decision was available to the South Dakota Supreme Court is unclear; nevertheless *Gerstein* is difficult to ignore. In fact, the First Circuit Court of Appeals has read *Gerstein* to require a judicial determination of probable cause as a prerequisite to interstate extradition. *Ierardi, supra*, at 930.

■ The consequences of extradition, with the concomitant disruption of employment and family, readily vouch for the seriousness of this process. As was pointed out in *Ierardi*:

1. *Fugitives from State or Territory to State, District or Territory*

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged. (June 25, 1948, c. 645, Sec. 3182, 62 Stat. 822.)

At best extradition means an extended period of detention, involving custody pending administrative arrangements in two states as well as forced travel in between. At worst it means separation from a familiar jurisdiction and effective denial of the support of family, friends and familiar advisors. If the charge is unsupported, the individual charged has a very substantial interest in having the error brought to light before rendition.

528 F.2d at 930. It is the opinion of this Court that extradition is clearly a "significant pretrial restraint of liberty".

In an opinion which preceded the holding in *Gerstein* J. Skelly Wright, writing for the District of Columbia Court of Appeals, balanced the competing interest of the state and the individual involved in extradition cases and concluded that:

There is no reason why the Fourth Amendment, which governs arrests, should not govern extradition arrests. Under its familiar doctrine arrests must be preceded by a finding of probable cause. When an extradition demand is accompanied by an indictment, that document embodies a grand jury's judgment that constitutional probable cause exists. But when the extradition papers rely on a mere affidavit, even where supported by a warrant, there is no assurance of probable cause unless it is spelled out in the affidavit itself. Thus Fourth Amendment considerations require that before a person can be extradited on a Section 3182 affidavit, the authorities in the asylum state must be satisfied that the affidavit shows probable cause.

*Kirkland v. Preston*, 128 U.S.App.D.C. 148, 385 F.2d 670, 676 (1967).

■ Extradition is a valuable tool in the law enforcement process. To encumber this proceeding by strapping on unnecessary formalities would perform no service. However, documenting probable cause on the face of an affidavit requires no more than what policemen do on a daily basis to secure arrest or search warrants. This minor imposition is necessary to protect against the very serious consequences of a wrongful extradition. In the instant cases, probable cause was so clearly lacking as to prompt the South Dakota Supreme Court to comment:

The affidavits in the cases before us are but conclusory in language. If we were to follow the *Kirkland* holding and to align ourselves with state jurisdictions such as New York which also follow *Kirkland*, it would be difficult to affirm the circuit court, at least on the basis of the affidavits alone.

*Wellington, supra*, at 502.

■ It is the ruling of the Court that the State of South Dakota has until June 1, 1976, to establish probable cause for arrest to the satisfaction of the State court. If probable cause is to be established by affidavit, recital of sufficient underlying circumstances is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for police. If the affidavits are not cured by the above mentioned date, the writs shall issue. Counsel for the defendants shall prepare the appropriate orders. The foregoing constitutes the findings of facts and conclusions of law.