No. 48,676

ROBERT H. WILBANKS, *Appellant,* v. STATE OF KANSAS, *Appellee.*
(579 P.2d 132)

Opinion filed May 6, 1978.

*S. Richard Mellinger,* of Roach & Mellinger, of Emporia, argued the cause and

was on the brief for the appellant.

*Philip E. Winter,* assistant county attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Petitioner, Robert H. Wilbanks, appeals from an order of the district court of Lyon County, Kansas, dissolving a writ of habeas corpus in an action brought to challenge extradition proceedings.

Petitioner contends that it was error to dissolve the writ of habeas corpus when there was no showing that a magistrate, before issuing an arrest warrant, had made an independent evaluation of the complaint to determine if probable cause existed that a crime had been committed and that Wilbanks committed it. Stated another way, he contends that the complaint, filed with an Idaho magistrate, was in itself insufficient to support a finding of probable cause, and there being no indication that affidavits or other evidence were presented to the magistrate, the issuance of the warrant is constitutionally invalid and will not support extradition. With the exception of his attack upon the initial Idaho complaint, petitioner does not challenge the extradition proceedings or the governor's warrant. We need not discuss those matters further.

The initial complaint was filed in the state of Idaho on September 3, 1975. It reads as follows:

"COMPLAINT-CRIMINAL

"PERSONALLY APPEARED before me this ____ day of August, 1975, in the County of Ada, who, being first duly sworn, complains and says: that Robert H. Wilbanks on or about the 17th day of July, 1975, in the County of Ada and State of Idaho, then and there being, did then and there commit the crime of issuing a check without funds (IC 18-3106 felony) said crime being committed as follows, to-wit:

"COUNT I

"That the said defendant, Robert H. Wilbanks, on or about the 17th day of July, 1975, in the County of Ada, State of Idaho, then and there being, did then and there knowingly, wilfully, intentionally, unlawfully, feloniously, and with intent to defraud one Power Shop Equipment and Supply, in the County of Ada, State of Idaho, make, draw, utter and deliver to the said Power Shop Equipment & Supply, a certain check for the payment of money in the sum of $372.61 Dollars, lawful money of the United States of America, which said check was and is in the words and figures as follows:

Robert H. Wilbanks                              186
P.O. Box 623                                92-6/1241
Boise, Idaho 83701

                                            7-17 , 1975

PAY
TO THE
ORDER OF    Power Shop                      $372.61
Three Hundred Seventy Two & 61/100——DOLLARS

First Security Bank of Idaho
  `  National Association
P.O. Box 7069, Boise, Idaho 83707
For_____                    Robert H. Wilbanks

well knowing at the time of his making, drawing, uttering and delivering said check that he, the said defendant, did not have any funds in or credit with said bank for the payment of said check, or for the payment of any part of said check.

"All of which is contrary to the form, force and effect of the statute in such case made and provided and against the peace and dignity of the State of Idaho.

"Said Complainant therefore prays that a Warrant issue for the arrest of said defendant, Robert H. Wilbanks, and that he may be dealt with according to law.

/s/ William Allan McAndy
William Allan McAndy

"Subscribed and sworn to before me this 3rd day of September, 1975.

/s/ L. Alan Smith
Magistrate

"(Filed:   9/3/75)"

Six days later, a warrant was issued by G. D. Carey, another magistrate in the same Idaho judicial district, for the arrest of Wilbanks. The complaint is drawn under section 18-3106 of the Idaho Code (1977 Supp.), which reads as follows:

"18-3106. **Drawing check without funds—Drawing check with insufficient funds—Prima facie evidence of intent.**—(a) Any person who for himself or as the agent or representative of another or as an officer of a corporation, wilfully, with intent to defraud shall make or draw or utter or deliver, or cause to be made, drawn, uttered or delivered, any check, draft or order for the payment of money upon any bank or depositary, or person, or firm, or corporation, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has no funds in or credit with such bank or depositary, or person, or firm, or corporation, for the payment in full of such check, draft or order upon its presentation, although no express representation is made with reference thereto, shall upon conviction be punished by imprisonment in the state prison for a term not to exceed three (3) years or by a fine not to exceed $5,000 or by both such fine and imprisonment.

.    .    .    .    .    .    .    .    .    .    .    .    .

(d) As against the maker or drawer thereof, the making, drawing, uttering or delivering of such check, draft or order as aforesaid shall be prima facie evidence

of intent to defraud and of knowledge of no funds or insufficient funds, as the case may be, in or credit with such bank, or depositary, or person, or firm, or corporation, for the payment in full of such check, draft or order upon its presentation. The word "credit" as used herein shall be construed to mean an arrangement or understanding with the bank or depositary, or person, or firm, or corporation upon whom such check, draft or order is drawn for the payment of such check, draft or order."

A comparison of I.C. 1977 Supp. 18-3106 (a) with the complaint shows that the complaint is written in almost the exact terms of the statute.

Three other sections of the Idaho Code are pertinent. These are I.C. 1977 Supp. 19-504, I.C. 1977 Supp. 19-505, and I.C. 19-506. These read as follows:

"19-504. **Examination of person lodging complaint.**—When a complaint is laid before a magistrate of the commission of a public offense, triable within the county, he must examine, under oath, the person lodging such complaint, and the written complaint, so lodged, shall be subscribed under oath by the party or parties lodging the same."

"19-505. **Contents of complaint.**—The complaint must set forth the facts stated by the complaining witness, tending to establish the commission of the public offense and the guilt of the defendant."

"19-506. **When warrant may issue.**—If the magistrate is satisfied therefrom that the offense complained of has been committed, and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant of arrest."

Our own statute governing the issuance of warrants for arrest upon the filing of complaints is K.S.A. 22-2302. It reads:

"If the magistrate finds from the complaint, or from an affidavit or affidavits filed with the complaint or from other evidence, that there is probable cause to believe both that a crime has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue. . . ."

The Judicial Council note appended thereto states that "This section parallels, with slight modifications, Rule 4 (a) Federal Rules of Criminal Procedure. . . ." The federal rule reads:

"Rule 4 (a) **Issuance.** If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it. . . ."

Charles Alan Wright, in Federal Practice and Procedure, comments on this rule as follows:

"The most important aspect of Rule 4 (a) is the provision that a warrant for

arrest may issue under this rule only if it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that an offense has been committed and that the defendant has committed it. This provision was recognized by the Advisory Committee that drafted it to be declaratory of existing law, and must be read in the light of the Fourth Amendment requirement of probable cause that it implements. . . ." 1 Wright, Federal Practice and Procedure, Criminal, § 51, p. 33.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The command of Rule 4 (a), taken from the Fourth Amendment, that a warrant for arrest may issue only on a showing of probable cause, involves one of the most important, and most difficult, concepts in criminal procedure. Its significance is by no means limited to this rule, nor to arrest warrants. The Fourth Amendment lays down the same standard for issuance of a search warrant. It is quite clear that the test of probable cause is the same, whether the warrant is for arrest or for a search, and cases involving search warrants must be considered in passing on probable cause for issuance of an arrest warrant. In addition, the probable cause that will justify a warrant is the minimum standard that must be satisfied if arrest without a warrant or a search without a warrant is to be held valid.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . [R]ecent Supreme Court decisions have answered many, if not all, of the questions as to the showing a complaint must make of probable cause. In Giordenello v. United States the complaint merely stated in the words of the statute that a particular person had committed an offense. The Court found the complaint insufficient, and held that the warrant issued on the basis of the complaint, and the resulting arrest and search, were invalid. The Court said that since the purpose of the complaint is to show the existence of the probable cause required to support issuance of a warrant, the commissioner or magistrate must judge for himself the persuasiveness of the facts relied on by the complaining officer and should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime. The complaint before it, the Court held, provided no basis for the commissioner to determine whether probable cause existed. 'The complaint contains no affirmative allegations that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made.' The Court held that the commissioner may not rely on a presumption that the complaining officer speaks with personal knowledge. It rejected also the government's argument that the complaint was adequate since its allegations would be sufficient for an indictment, pointing out that an indictment issues only after the grand jury has determined that probable cause exists, while the complaint is the basis for the commissioner's determination as to probable cause.

"The Giordenello case held that the basis for the finding of probable cause must 'appear on the face of the complaint.' The 1966 amendment of Rule 4 (a), which permits this showing to be made by an affidavit or affidavits filed with the complaint, makes no significant departure from that requirement. . . ." 1 Wright, Federal Practice and Procedure, Criminal, § 51, pp. 36-38.

The Fourth Amendment to the United States Constitution provides that:

.

"The right of the people to be secure in their persons . . . shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This section has been held applicable to the issuance of warrants for arrest as well as warrants authorizing a search. Similar language is contained in section 15 of the Kansas Bill of Rights. As we noted in *State v. Wood,* 190 Kan. 778, 788, 378 P.2d 536 (1963):

"The Fourteenth Amendment of the Federal Constitution, as extended by the United States Supreme Court in *Mapp v. Ohio,* supra, to protect citizens of the United States from unreasonable searches and seizures by state officers, does not go beyond the prohibition in our own constitution as above quoted. In other words, the command of the Fourth Amendment in the Federal Constitution to federal officers is identical to the command of Section 15 of the Kansas Bill of Rights to law enforcement officers in Kansas."

In a long line of oft-cited and now familiar cases, the United States Supreme Court has repeatedly set forth these rules:

1. The standard for arrest, mandated by the Fourth Amendment, is probable cause. *Gerstein v. Pugh,* 420 U.S. 103, 111-112, 43 L.Ed.2d 54, 95 S.Ct. 854 (1975), and cases cited therein.

2. The Fourth Amendment is enforceable against the states through the due process clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684 (1961); *Ker v. California,* 374 U.S. 23, 10 L.Ed.2d 726, 83 S.Ct. 1623 (1963); *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964); *Whiteley v. Warden,* 401 U.S. 560, 28 L.Ed.2d 306, 91 S.Ct. 1031 (1971).

3. The Fourth Amendment requires that before a warrant for arrest or search may be issued, there must be a probable cause finding by a neutral and detached magistrate. *Johnson v. United States,* 333 U.S. 10, 92 L.Ed. 436, 68 S.Ct. 367 (1948); *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966); *Mancusi v. DeForte,* 392 U.S. 364, 20 L.Ed.2d 1154, 88 S.Ct. 2120 (1968); *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971); *Shadwick v. City of Tampa,* 407 U.S. 345, 32 L.Ed.2d 783, 92 S.Ct. 2119 (1972); and *Connally v. Georgia,* 429 U.S. 245, 50 L.Ed.2d 444, 97 S.Ct. 546 (1977).

4. The Fourth Amendment probable cause standards require that before a warrant for either an arrest or a search can be issued,

the magistrate must be supplied with sufficient factual information to support an independent judgment that probable cause exists. The magistrate must judge for himself the persuasiveness of the facts; he should not accept without question the complainant's mere conclusions; and he should not be a mere "rubber stamp" for law enforcement officers. *Giordenello v. United States,* 357 U.S. 480, 2 L.Ed.2d 1503, 78 S.Ct. 1245 (1958); *Rugendorf v. United States,* 376 U.S. 528, 11 L.Ed.2d 887, 84 S.Ct. 825 (1964); *Aguilar v. Texas,* supra; *Spinelli v. United States,* 393 U.S. 410, 21 L.Ed.2d 637, 89 S.Ct. 584 (1969); and *Whiteley v. Warden,* supra.

5. The same probable cause requirements cover the issuance of both federal and state warrants. *Ker v. California,* supra, and *Whiteley v. Warden,* supra.

6. Hearsay, set forth in a warrant application, may be relied upon and form the basis for a probable cause finding, so long as a substantial basis for crediting the hearsay is presented. *Aguilar v. Texas,* supra; and *Jones v. United States,* 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725 (1960). We note that rule 4 F.R. Crim. P. has been amended to clarify this issue. The rule now includes the following statement: "The finding of probable cause may be based upon hearsay evidence in whole or in part." (Rule 4[b] F.R. Crim. P.)

7. An affidavit, or complaint, otherwise insufficient as a warrant application, cannot be rehabilitated by testimony concerning information possessed by the complainant or affiant when he sought the warrant, if that information was not disclosed and brought to the attention of the magistrate before the warrant was issued. *Giordenello v. United States,* supra; *Aguilar v. Texas,* supra; and *Whiteley v. Warden,* supra.

Two of the cases cited above are particularly instructive. In *Giordenello,* a federal warrant for the arrest of Giordenello had been issued by a United States Commissioner, based upon a complaint filed with the Commissioner. The complaint, sworn to by an agent of the Federal Bureau of Narcotics, recited merely that on or about the date upon which the complaint was filed:

"Giordenello did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation; in violation of Section 174, Title 21, United States Code.

"And the complainant further states that he believes that ⸺⸺⸺ are material witnesses in relation to this charge." (p. 481.)

Giordenello contended that the complaint was defective in that it in effect recited no more than the elements of the crime charged, and provided no basis for a probable cause determination by the Commissioner. After discussing Rules 3 and 4 of the Federal Rules of Criminal Procedure, and the commands of the Fourth Amendment, the Court said:

"When the complaint in this case is judged with these considerations in mind, it is clear that it does not pass muster because it does not provide any basis for the Commissioner's determination under Rule 4 that probable cause existed. The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made. We think these deficiencies could not be cured by the Commissioner's reliance upon a presumption that the complaint was made on the personal knowledge of the complaining officer. The insubstantiality of such an argument is illustrated by the facts of this very case, for [the agent's] testimony at the suppression hearing clearly showed that he had no personal knowledge of the matters on which his charge was based. In these circumstances, it is difficult to understand how the Commissioner could be expected to assess independently the probability that petitioner committed the crime charged. Indeed, if this complaint were upheld, the substantive requirements would be completely read out of Rule 4, and the complaint would be of only formal significance, entitled to perfunctory approval by the Commissioner. This would not comport with the protective purposes which a complaint is designed to achieve.

". . . Here, in the absence of an indictment, the issue of probable cause had to be determined by the Commissioner, and an adequate basis for such a finding had to appear on the face of the complaint." (pp. 486-487.)

*Whiteley v. Warden,* supra, involved a complaint filed in a Wyoming state court, and the validity of the warrant issued thereon. The complaint, signed before a Justice of the Peace by the Sheriff of the county in which the offense occurred, read as follows:

" 'I, C. W. Ogburn, do solemnly swear that on or about the 23 day of November, A.D. 1964, in the County of Carbon and State of Wyoming, the said Harold Whiteley and Jack Daley, defendants did then and there unlawfully break and enter a locked and sealed building [describing the location and ownership of the building].' " (p. 563.)

The court said:

"The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. . . . In the instant case—so far as the record stipulated to by the parties

reveals—the sole support for the arrest warrant issued at Sheriff Ogburn's request was the complaint reproduced above. That complaint consists of nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense described in the complaint. The actual basis for Sheriff Ogburn's conclusion was an informer's tip, but that fact, as well as every other operative fact, is omitted from the complaint. . . . [T]hat document alone could not support the independent judgment of a disinterested magistrate. (pp. 564-565.)

. . . . . . . . . . . . . . . .

"In sum, the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate. The arresting officer was not himself possessed of any factual data tending to corroborate the informer's tip that Daley and Whiteley committed the crime. Therefore, petitioner's arrest violated his constitutional rights under the Fourth and Fourteenth Amendments; the evidence secured as an incident thereto should have been excluded from his trial." (pp. 568-569.)

Applying these principles to the complaint before us, filed in the Idaho court, it is clear that no probable cause information is contained therein. The complaint is drawn in the wording of the Idaho statute, and discloses no factual basis for the belief by the person who signed the complaint that Wilbanks committed the offense charged. The purpose of a complaint is to provide an answer to the magistrate's hypothetical question, "What makes you think that the defendant committed the offense charged?" (*Jaben v. United States,* 381 U.S. 214, 224-225, 14 L.Ed.2d 345, 85 S.Ct. 1365 [1965].) The belief of the complainant *may* have been based upon statements given law enforcement officers by the owner or employees of Power Shop Equipment and Supply; the defendant may have been identified photographically or by fingerprints on the check; the bank upon which the check was drawn may have provided further information. These, however, are suppositions; none of this information is provided in the complaint; none of it was provided to the magistrate so far as we are aware; and no such information is disclosed in the record before us.

We are not unmindful of the cases in which we have said in substance that a properly verified complaint, charging an offense substantially in the language of the statute, is sufficient authority for a finding of probable cause and the issuance of an arrest warrant. For example, see *State v. Giddings,* 216 Kan. 14, 17, 531 P.2d 445 (1975); *State v. Greene,* 214 Kan. 78, 79, 519 P.2d 651; *State v. Woods,* 214 Kan. 739, 741, 522 P.2d 967 (1974); *State v. Addington,* 205 Kan. 640, 644, 472 P.2d 225 (1970); *Topeka v.*

*Raynor,* 61 Kan. 10, 58 Pac. 557 (1899); *Holton v. Bimrod,* 61 Kan. 13, 58 Pac. 558 (1899); and *State v. Brooks,* 33 Kan. 708, 711, 7 Pac. 591 (1885). To whatever extent those cases are inconsistent with the views hereafter expressed, they are disapproved.

In recognition of the commands of the Fourth Amendment and section 15 of the Kansas Bill of Rights, we have held that an affidavit by an officer that he believes or has good reason to believe that certain contraband items are located in a certain place is not sufficient to support the issuance of a *search* warrant. *State v. McMillin,* 206 Kan. 3, 5-6, 476 P.2d 612 (1970). In *State v. Hart,* 200 Kan. 153, 434 P.2d 999 (1967), Justice Fontron, speaking for a unanimous court, said:

". . . [B]efore a search warrant may validly be issued, there must have been placed before the issuing magistrate sufficient facts to enable him to make an intelligent and independent determination that probable cause exists; that bald conclusions or mere affirmations of belief or suspicion are not enough; and while an affidavit may be based on hearsay, there must be sufficient affirmative allegations as to the affiant's personal knowledge or his knowledge concerning his informant, or as to the informant's personal knowledge of the things about which the informant spoke, to provide a rational basis upon which the magistrate can make a judicious determination of probable cause." (p. 162.)

Arrest and detention are no less serious invasions of the rights of a citizen than are searches of a citizen's house, automobile, or place of business. Warrants for arrest cannot be issued except upon probable cause. Statements to the contrary in our earlier cited cases notwithstanding, we now hold that a verified complaint couched in the language of a criminal statute, standing alone, is not sufficient to support a finding of probable cause and the issuance of an arrest warrant.

The purpose of a complaint, filed with a magistrate, is twofold: first, its function is to disclose sufficient factual information to enable a magistrate to make an intelligent and impartial finding that there is probable cause to believe that a specific crime has been committed, and that the defendant has committed or is committing it; and second, its function is to inform the defendant of the particular offense with which he or she is charged, and provide an accusation upon which a trial can be held.

Criminal statutes, such as those contained in chapter 21 of the Kansas Statutes Annotated, set forth the statutory definitions of crimes, generally in terms of act and intent. A verified complaint, drawn in the language of a criminal statute, and merely stating

that the defendant did certain acts with a specific intent, is not sufficient in itself to support a finding of probable cause. In order to support such a finding, a complaint must disclose the factual reasons for the complainant's belief. The statement of the facts, in most instances, can be concise: the complainant saw the defendant commit the offense; the owner reports a car stolen, and the defendant is apprehended shortly thereafter, driving the vehicle; the occupant of a building discovers evidence of a forced entry and finds various items of personal property missing, and the items are found later that day in defendant's possession; a merchant identifies defendant as the person who obtained merchandise by the use of a credit card issued in the name of a third person, and the third person states that the card was stolen, and defendant was not authorized to use it.

Rule 4, Fed. R. Crim. P., limits the magistrate to consideration of "the complaint, or . . . an affidavit or affidavits filed with the complaint." Our statute, K.S.A. 22-2302, provides that a magistrate may consider "other evidence." It is preferable, and the most desirable practice, to include probable cause information in the body of the complaint. However, we recognize that under the statute a separate affidavit or affidavits may be filed with the complaint, or sworn testimony may be offered. Such testimony should be recorded and preserved, either by a court reporter or through electronic means.

The important point, which we emphasize, is that sufficient factual information must be presented to enable the magistrate to make an independent finding of probable cause before a warrant is issued, as mandated by the Fourth and Fourteenth Amendments, and section 15 of the Bill of Rights.

The Idaho complaint, upon which the warrant was issued, and upon which extradition proceedings are premised, was not sufficient in itself to support a finding of probable cause, upon which the issuance of the Idaho warrant could be based. This brings us to the crucial issue: whether the probable cause requirement of the Fourth Amendment is applicable in extradition proceedings. Petitioner contends that it is, and he cites various cases from other jurisdictions in support of his claim; we will examine those presently.

Article IV, § 2, clause 2, of the United States Constitution provides the foundation upon which extradition proceedings are based. It provides:

"A person *charged* in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime." (Emphasis supplied.)

Our statute, K.S.A. 22-2703, is a part of the Uniform Criminal Extradition Act passed by the Kansas Legislature in 1970. It provides in substance that demands for extradition must be in writing, must allege that the accused was present in the demanding state at the time of the commission of the alleged crime, and thereafter fled from the state, and the demand must be "accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon . . . The indictment, information affidavit or affidavit made before the magistrate must *substantially charge* the person demanded with having committed a crime under the law of that state . . ." (Emphasis supplied.)

Petitioner contends that he is not "charged" as that term is used in article IV, § 2, and that the complaint does not "substantially charge" him with a crime, as those words are used in K.S.A. 22-2703, and thus the extradition request is invalid. We find that the great majority of the recent pronouncements on the subject support the position taken by petitioner. Most, if not all, of these cases were decided following the United States Supreme Court's pronouncements on the Fourth Amendment in the 1960's—*Jones, Ker, Rugendorf, Aguilar, Jaben,* and *Spinelli.*

The first and perhaps the leading case in this area is *Kirkland v. Preston,* 385 F.2d 670 (D.C. Cir. 1967). Florida authorities sought to extradite Kirkland from the District of Columbia. The police officer's affidavit, serving as a complaint, and upon which the arrest warrant was based, recited simply that on or about a given date, Kirkland "DID THEN AND THERE: unlawfully, wilfully, maliciously and feloniously set fire to and burn or cause to be burned a certain building, to wit: The Hut Bar . . . the said bar being the property of one Fredrich Ritter." The Chief Judge, in the extradition hearing, ruled that Kirkland was "substantially charged" and ordered extradition. Kirkland then sought habeas corpus in the district court, which ruled that the affidavit was

"sufficient" and discharged the writ. Kirkland appealed to the District of Columbia Circuit, which held that the Florida affidavit was insufficient. The rationale of the *Kirkland* decision is set forth as follows:

"Before Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), made the Fourth Amendment applicable to the states through the Fourteenth, and Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), made it enforceable against them by the same sanctions and by application of the same constitutional standards as prohibit unreasonable searches and seizures by the federal government, the quantum of evidence needed for arrest in the individual states was not a matter of federal concern. Though a pre-*Wolf* constitutional law of arrest could perhaps have been developed directly from the Fourteenth Amendment's 'deprivation of liberty' clause, it apparently was not. And, in fact, only developments since *Wolf* and *Mapp* have made it clear that what those cases applied to the states was the whole of the Fourth Amendment, thereby transmuting the federal standard of probable cause into a minimal and uniform requirement of a valid arrest by state officers. [p. 674.]

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"There is no reason why the Fourth Amendment, which governs arrests, should not govern extradition arrests. Under its familiar doctrine arrests must be preceded by a finding of probable cause. When an extradition demand is accompanied by an indictment, that document embodies a grand jury's judgment that constitutional probable cause exists. But when the extradition papers rely on a mere affidavit, even where supported by a warrant of arrest, there is no assurance of probable cause unless it is spelled out in the affidavit itself. Thus Fourth Amendment considerations require that before a person can be extradited on a Section 3182 affidavit the authorities in the asylum state must be satisfied that the affidavit shows probable cause.

"The law appreciates the hardship which extradition can involve: not only the suspension of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition. It is consistent with this concern for the accused's just treatment to recognize his right to require official confirmation of probable cause in the asylum state before extradition. This right to probable cause confirmation seems especially appropriate in view of the fact that the accused will have no access to an evidentiary preliminary hearing on probable cause until he finally arrives in the accusing jurisdiction.

"In addition, the interests of the asylum state are advanced by its own probable cause determination. For it would be highhanded to compel that jurisdiction to lend its coercive authority, and the processes of its law, against even its own citizens in aid of an enterprise the key details of which remain in the dark. If, as here, it turns out that the prosecution against the fugitive is unfounded, the asylum state will have expended its resources and given the legitimizing stamp of its judiciary to a cause which is at best futile, at worst arbitrary.

"Recognizing a probable cause requirement in Section 3182, moreover, conflicts with no compelling interests elsewhere in the legal system. If the demanding

state does have probable cause data, it will be no real inconvenience to record this evidence in the extradition papers. Documenting probable cause in an affidavit is what the policeman in many jurisdictions, including the District of Columbia, must do if he is to secure an ordinary warrant for an arrest or search. And governors, or *habeas corpus* judges, will hardly be significantly burdened by having to study written submissions for probable cause in extradition cases.

"From all these considerations the court draws the conclusion that the terms of 18 U.S.C. § 3182 are not met unless the affidavit indicates to the asylum state executive that there is probable cause for believing the accused guilty and that *habeas corpus* is the appropriate remedy to test the validity of his judgment. . . ." (pp. 676-677.)

We should note that 18 U.S.C. § 3182, the federal extradition statute referred to in the quoted portion of the *Kirkland* opinion, requires the state seeking extradition to produce "a copy of an indictment found or an affidavit made before a magistrate . . . *charging* the person demanded with having committed treason, felony, or other crime . . ."

*Kirkland* has been followed in New York, Delaware, Nevada, Wisconsin, Connecticut, Illinois, Colorado, New Hampshire, Michigan, the First and Third Circuits, and the United States District Court for the District of South Dakota. See *People v. Artis,* 32 A.D.2d 554, 300 N.Y.S.2d 208 (1969); *People ex rel. Porzio v. Wright,* 59 Misc. 2d 1056, 301 N.Y.S.2d 668 (1969); *People ex rel. Miller v. Krueger,* 35 A.D.2d 743, 316 N.Y.S.2d 246 (1970); *People ex rel. Cooper v. Lombard,* 45 A.D.2d 928, 357 N.Y.S.2d 323 (1974); *Grano v. State,* 257 A.2d 768 (Del. Super. 1969); *Sheriff v. Thompson,* 85 Nev. 211, 452 P.2d 911 (1969); *State v. Towne,* 46 Wis. 2d 169, 174 N.W.2d 251 (1970); *Brode v. Power,* 31 Conn. Sup. 411, 332 A.2d 376 (1974); *Ierardi v. Gunter,* 528 F.2d 929 (1st Cir. 1976); *Wellington v. State of S. D.,* 413 F. Supp. 151 (D. S.D. 1976); *United States ex rel. Grano v. Anderson,* 446 F.2d 272 (3d Cir. 1971); *People ex rel. Kubala v. Woods,* 52 Ill. 2d 48, 284 N.E.2d 286 (1972); *Pippin v. Leach,* 188 Colo. 385, 534 P.2d 1193 (1975); *Smith v. Helgemoe,* 117 N. H. 91, 369 A.2d 218 (1977); and *People v. Doran,* 401 Mich. 235, 258 N.W.2d 406 (1977).

*Ierardi,* supra, was decided after *Gerstein,* in which the United States Supreme Court held that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." (420 U.S. at 126.) The *Ierardi* court said:

"We agree with the district court that *Gerstein* requires a judicial determination of probable cause as a prerequisite to interstate extradition. After *Gerstein* such a

determination must precede 'any significant pretrial restraint of liberty,' 420 U.S. at 125, 95 S.Ct. at 868, and we think interstate extradition necessarily involves significant restraint. . . .

". . . [R]espondents point to two governmental interests at stake in extradition which were not considered in *Gerstein* and which, respondents say, would be defeated by reading *Gerstein* to require a pre-rendition judicial determination of probable cause. These are the interests of comity in transactions between sister states, and of efficiency in bringing to justice criminals who have fled interstate. We agree that these interests are of the utmost importance, but not that they are significantly burdened by imposition of *Gerstein's* requirement in this context. Respondents seem to assume that if a judicial determination of probable cause must precede extradition, it must be provided by the courts of the asylum state, where the fugitive is held. This is not so. *Gerstein* explicitly rejected the need for adversarial procedures; it required only the neutral and detached judgment of a judicial officer or tribunal, and contemplated that this could be provided before as well as shortly after arrest. Thus nothing in *Gerstein* prevents the demanding state from providing the requisite pre-rendition determination of probable cause.

"With this in mind, we do not believe it compromises the principles of comity to require a judicial determination of probable cause before rendition. Such a determination is fully consistent with reliance by the asylum state on the regularity of the demanding state's procedures. . . .

"Nor do we believe that a prior judicial determination of probable cause in this context presents such an obstacle to efficient law enforcement as to justify postponing the determination until after rendition. . . . [P]apers must in any event be prepared in the demanding state, including (in the absence of an indictment) an affidavit and some form of judicial process, and under *Gerstein* probable cause must in any event be judicially determined before any extended pretrial detention in either the asylum or the demanding state. In this context to require the judicial determination of probable cause to precede rendition is to impose little additional burden on the states." (pp. 930-931.)

To be sure, there are jurisdictions in which the *Kirkland* rationale is not followed. *Garrison v. Smith,* 413 F. Supp. 747 (N.D. Miss. 1976) and *Taylor v. Garrison,* 329 So. 2d 506 (Miss. 1976), both reject the *Kirkland* view; however, these cases were preceded by a three-day evidentiary hearing in the Mississippi trial court during which proceeding probable cause was fully established. Similarly, in *People ex rel. Kubala v. Woods,* supra, there were factual affidavits made before a notary public which, if believed, supplied ample probable cause. The one case which fails to follow *Kirkland,* and where there appears to be no showing of probable cause, is *Bailey v. State,* 260 Ind. 448, 296 N.E.2d 422 (1973). We do not choose to follow *Bailey.*

We find the rationale of *Kirkland* and *Ierardi,* supra, persuasive, and conclude that Fourth Amendment standards apply in extradition proceedings, and that a person is not "charged" or

"substantially charged" by the filing of a complaint or affidavit which does not provide sufficient information to enable a "neutral and detached magistrate" to make an independent determination of probable cause. This holding places no burden on the demanding state which it does not already have under the Fourth and Fourteenth Amendments. We should point out that our ruling in this case applies only to warrants issued upon informations, affidavits or complaints; when warrants are issued upon indictments, a finding of probable cause has already been made by the grand jury which returned the indictment.

The record in *McCullough v. Darr,* 219 Kan. 477, 548 P.2d 1245 (1976), discloses that the prosecutions there were commenced by the filing of an information, supported by a detailed affidavit. The question of probable cause was not raised, perhaps because of the adequacy of the latter document. We there held that the Governor's warrant creates a *prima facie* case for the state, and that "[s]o long as the charge made against one whose extradition is sought legally constitutes a crime, technical defects in the extradition papers cannot prevent extradition." (p. 481.)

*McCullough* is distinguishable upon the facts. Further, we do not regard the total absence of any record showing of probable cause as a "technical" or inconsequential defect in the extradition papers, for probable cause is constitutionally mandated. The documents here before us do not disclose any facts upon which a probable cause finding could have been made. The *prima facie* case made by a Governor's warrant is overcome where, as here, the documents supporting the Governor's warrant do not "substantially charge" the defendant with a crime. A person is not "substantially charged" by the filing of documents which do not comport with Fourth Amendment standards.

Our holding herein, however, does not require the immediate issuance of the writ, or the discharge of petitioner. Like many of the courts following the *Kirkland* rationale, we conclude that the demanding state, Idaho, should be granted a reasonable time within which to demonstrate that it in fact had probable cause at the time the arrest warrant was issued. We conclude that thirty days is a reasonable period within which to make such a showing.

The judgment dissolving the writ of habeas corpus is reversed and the case is remanded to the district court, with directions to discharge the petitioner, Robert H. Wilbanks, unless within thirty

days from the date of this opinion the respondent makes a showing of probable cause in accordance with this opinion.

FROMME, J., dissenting. The shock of the foregoing opinion will reverberate throughout this state. Its impact will be felt in every courtroom, including our own. This court for almost one hundred years has advised prosecuting attorneys of the state that a verified complaint charging an offense substantially in the language of a statute proscribing certain acts is sufficient. See *State v. Brooks,* 33 Kan. 708, 711, 7 Pac. 591 (1885). It has been the practice in many counties, on the filing of such a complaint, for the magistrate to orally examine the complainant or other person appearing before him. If probable cause was found to credit the allegations in the complaint the magistrate issued the arrest warrant. Hereafter there is no presumption of probable cause attending the judicial determination of probable cause on which an arrest warrant is issued.

Now this court mandates before a warrant is issued that an additional affidavit be filed or a statement be included in the complaint to set forth the facts in detail and list the names of witnesses who will testify to those facts even though the complainant unequivocally swears on oath that the facts constituting the crime are true.

In the present case the complainant William Allan McAndy did not equivocate by swearing to the complaint on information and belief. He set out the facts constituting the crime along with a copy of the check and swore on oath that Robert H. Wilbanks committed the crime by issuing said check without funds, feloniously, and with intent to defraud the payee. It was sworn to before the magistrate. The prosecuting attorney of Ada County, Idaho, was David H. Leroy. The complainant, William Allan McAndy, is not one of the officers in the Ada County Sheriff's Office nominated as an agent of the State of Idaho to receive the fugitive. Therefore, there is no reason to hold that the complaint is insufficient for the issuance of a warrant on probable cause. The facts were sworn to from personal knowledge.

If I interpret the decision of the majority correctly no magistrate can safely make a judicial determination of probable cause without having a sufficient probable cause basis sworn to in writing. This must either be set forth in the complaint itself, in a

separate affidavit, or in the form of a transcribed statement of oral evidence taken before the magistrate.

The federal cases cited in the majority opinion are not authority for questioning probable cause in issuing the Idaho warrant in the present case. In *Giordenello v. United States,* 357 U.S. 480, 2 L.Ed.2d 1503, 78 S.Ct. 1245 (1958), a federal narcotics agent signed a one-sentence complaint. In *Whiteley v. Warden,* 401 U.S. 560, 28 L.Ed.2d 306, 91 S.Ct. 1031 (1971), a sheriff signed a one-sentence complaint. In *Kirkland v. Preston,* 385 F.2d 670 (D. C. Cir. 1967), a police officer signed the initial complaint against Kirkland. In *Ierardi v. Gunter,* 528 F.2d 929 (1st Cir. 1976), the information was executed by a Florida prosecutor and supported by an affidavit of a police officer. None of these officials had personal knowledge of the facts constituting the crime charged.

In order to understand the reasoning in the *Kirkland* and *Ierardi* cases it should be noted that the original complaints signed by state officials were executed under the Florida law as it existed prior to *Gerstein v. Pugh,* 420 U.S. 103, 43 L.Ed.2d 54, 95 S.Ct. 854 (1975). Prior to *Gerstein* under Florida law an information alone was considered the equivalent of an indictment and sufficient in itself to establish probable cause. Therefore in *Kirkland* and *Ierardi* there was no judicial determination of probable cause as a prerequisite to interstate requisition. *Gerstein* changed the Florida law in this respect holding the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention. I do not quarrel with that holding. There was a judicial determination in the present case.

The present practice of the United States District Attorneys of including two or three pages of information listing witnesses and what the investigators say the witnesses will testify to should not be adopted in the state courts. Such recitations are made from hearsay and, in my opinion, lend little if any credence to the judicial determination by the magistrate of probable cause. The witnesses listed are seldom if ever called before the federal magistrate. Our statute, K.S.A. 22-2302, provides:

"If the magistrate finds from the complaint, or from an affidavit or affidavits filed with the complaint *or from other evidence,* that there is probable cause to believe both that a crime has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue. . . ."

The practice in Kansas and in Idaho of requiring the com-

plaining witness to sign a complaint under oath of his or her own personal knowledge should be sufficient to obtain a judicial determination of probable cause on which a warrant is issued. If the allegations in the complaint are questionable the magistrate may require some further showing, but once the magistrate issues the warrant based upon a sworn complaint charging an offense substantially in the language of the statute proscribing certain acts, then the requirements of our statute and of the constitutions have been met.

In *McCullough v. Darr*, 219 Kan. 477, 548 P.2d 1245 (1976), this court in unanimous accord held:

"The Constitution does not require, as an indispensable prerequisite to interstate extradition, that there should be a good indictment, or even an indictment of any kind. It requires nothing more than a charge of crime." (Syl. ¶ 2.)

"Where an accused challenges extradition in a habeas corpus proceeding brought under the Uniform Criminal Extradition Act, the Governor's warrant issued in the extradition proceedings is presumed valid and regular in all respects, thus casting the burden of proof upon the petitioner to overcome the *prima facie* case made by the Governor's warrant." (Syl. ¶ 3.)

"So long as the charge made against one whose extradition is sought legally constitutes a crime, technical defects in the extradition papers cannot prevent extradition." (Syl. ¶ 4.)

The majority here attempt to distinguish *McCullough* upon the facts. They disregard the basis for the decision, *i.e.*, the presumption of validity which attends a warrant issued by a magistrate after a judicial determination, and say the documents supporting the Governor's warrant do not "substantially charge" the defendant with a crime in the present case. There is little doubt a crime was charged in *McCullough* and a crime was charged in the present case. In *McCullough* the presumption of validity was recognized by this court. In the present case it is not. The present case has the effect of overruling *McCullough* by holding that there is no presumption of validity which attends a Governor's warrant in extradition proceedings, and that full faith and credit will not be extended to a judicial determination made by a magistrate in another state.

In conclusion I wish to note from the record of proceedings in this habeas corpus case the petitioner Wilbanks appeared and offered no evidence to overcome the presumption which attends the judicial determination of probable cause entered by the magistrate in Idaho. The attorney for petitioner raised the question of

identity. The petitioner was identified by pictures and finger-prints furnished by the Idaho authorities. The Idaho fingerprints were compared with fingerprints of the petitioner by an expert witness, and the judge hearing the matter had ample opportunity to observe and compare the pictures with the appearance of the petitioner who was in the courtroom.

The district court properly dissolved the writ of habeas corpus after granting the petitioner a full hearing. I would affirm that action.

McFARLAND, J., joins the foregoing dissenting opinion.