(No. 43317.—

THE PEOPLE *ex rel.* MICHAEL KUBALA, Appellant, v. JOSEPH I. WOODS, Sheriff, Appellee.

*Opinion filed March 21, 1972.—Rehearing denied June 23, 1972.*

GEORGE P. LYNCH, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and GEORGE M. ELSENER, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Relator, Michael Kubala, appeals from the order of the circuit court of Cook County quashing a writ of *habeas corpus* and remanding him to the custody of the sheriff of Cook County for delivery to agents of the State of Michigan pursuant to an extradition warrant issued by the Governor of Illinois upon the requisition of the Governor of Michigan.

Relator contends first that the order of the trial court must be reversed for the reason that the affidavits filed in support of the Michigan requisition were not made before a magistrate as required by 18 U.S.C.A. 3182 and section 3 of the Uniform Criminal Extradition Act (Ill.Rev.Stat. 1969, ch. 60, par. 20) and that the complaints upon which the warrants for his arrest were issued are drawn in conclusory statutory language, do not identify the complainant's sources of information and fail to show probable cause for his arrest. The relevant provision of section 3182 of Title 18 is that the demand for extradition of a fugitive may be supported by "an affidavit made before a magistrate *** charging the person demanded with having committed treason, felony or other crime ***." The pertinent provision of section 3 of the Extradition Act is that: "No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing *** and accompanied *** by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon ***. The *** affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state ***."

The record shows that there are two complaints, identical except as hereafter noted. The first complaint, sworn to by James Powell before J. Robert Smolenski, Judge of District Court, 61st Judicial District, City of

Grand Rapids, Michigan, alleges that on October 25, 1969, "Michael Kubala, not having a license as required by law, did unlawfully and feloniously sell, dispense or otherwise dispose of to Robert Roodvoets a narcotic drug, to-wit: a quantity of Cannabis Sativa, also known as Marijuana, in violation of the provisions of Section 18.1122 of Michigan Statutes Annotated, as amended." In a space provided in the complaint form and headed "Witnesses (Preliminary Exam)" are listed the following: James Powell, Grand Rapids police officer; Adrian Hoogerheide, Grand Rapids police officer; Victor Gillis, Grand Rapids police officer; Charles Quick, Michigan Department of Health Crime Laboratory, Lansing; an unnamed agent, Board of Pharmacy, Lansing; and Robert Roodvoets. The second complaint alleges an offense on October 29, 1969, and instead of Victor Gillis lists as a witness, Martin Brown, Grand Rapids police officer. Judge Smolenski issued an arrest warrant on each complaint and copies of the warrants are made part of the requisition papers. The complaints and warrants are dated January 20, 1970.

The requisition papers also contain the affidavits of Robert Anderson, the Superintendent of Police, Grand Rapids, Michigan, Robert K. Roodvoets II, James Powell, and Adrian Hoogerheide, all made before Carole N. Edmonds, a notary public. The Roodvoets, Powell and Hoogerheide affidavits were taken on February 4, 1970, and the Anderson affidavit was taken on February 6, 1970.

Roodvoets, in his affidavit, states that he was personally acquainted with Michael F. Kubala, formerly of apartment 4, 216 State Street, S.E., Grand Rapids, Michigan; that on October 5, 1969, he went to the apartment and asked Kubala if he had any "speed" for sale and Kubala said no; that Kubala said he had some "grass" for $15 a "lid"; that he looked at the material and recognized it to be marijuana; that he paid Kubala $15 and

received the material in a plastic "baggie"; that he gave the material to the Grand Rapids police. He also describes another purchase of marijuana from Kubala at the apartment on October 29, 1969. Attached to the affidavit is a Grand Rapids police department "mug" photograph dated January 29, 1968, which Roodvoets says in his affidavit is a photograph of Michael Kubala.

Powell's affidavit recites that he observed Roodvoets go to the Kubala apartment on October 29, 1969, at 7:45 P.M.; that Roodvoets came out at 7:55 P.M. and gave him a plastic bag; that the plastic bag was turned over to the Michigan Department of Health Crime Laboratory; that the contents of the bag were analyzed by the crime laboratory and found to be marijuana; and that the photograph is the picture of Michael F. Kubala referred to in the affidavit of Robert K. Roodvoets II. The Hoogerheide affidavit is similar to the Powell affidavit and describes the October 25, 1969, sale.

Superintendent Anderson in his affidavit says that he received a telegram from the Hoffman Estates, Illinois, police department and that he believes Michael Kubala is under arrest and in custody in the city of Hoffman Estates, Illinois. Attached to the affidavit is a telegram dated January 22, 1970, from the Hoffman Estates police department informing the Grand Rapids police department that Kubala was fighting extradition, that his court date was February 24, 1970, and that he had been released on $5,000 bond.

There is no question that the affidavits of Roodvoets, Powell, Hoogerheide and Anderson which were made before a notary public rather than before a magistrate will not support the issuance of the rendition warrant. *(People ex rel. Coats v. Sain (1962), 24 Ill.2d 248; People ex rel. Rukavina v. Sain (1961), 22 Ill.2d 546; People ex rel. LaRue v. Meyering (1934), 357 Ill. 166.)* It is equally clear that the complaints which were sworn to before the

district judge in Michigan are in conclusory statutory language, lack identification of sources, and do not, therefore, show probable cause for his arrest.

Relator's contention that he cannot be extradited because the complaint upon which the warrant was issued does not show probable cause is based principally on *Kirkland v. Preston (D.C. cir. 1967), 385 F.2d 670.* In that case the fugitives were arrested in the District of Columbia on a rendition warrant seeking their extradition to Florida. The Court of Appeals, in reversing the District Court order quashing a writ of *habeas corpus,* held that apprehension of a fugitive under section 3182 is a criminal arrest, and the affidavit delivered to the asylum jurisdiction does not charge a crime for purposes of extradition unless it sets out facts which justify a fourth amendment finding of probable cause.

The argument that no arrest should be made in the asylum State without a showing of probable cause has great appeal, for as the Supreme Court said in *United States v. Marion, 404 U.S. 307, ——, 30 L.Ed.2d 468, 478, 92 S.Ct. 455, 463,* "Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and his friends." This argument, however appealing, must nevertheless be considered from the standpoint that the legislation, both State and Federal, is designed to furnish an expeditious and summary procedure for returning a fugitive to the demanding State *(People ex rel. Brown v. Jackson (1971), 49 Ill.2d 209),* and in light of our earlier decisions limiting the scope of judicial inquiry in an extradition proceeding. The implementation of the intent that the extradition procedure be expeditious and summary would appear to dictate that the question of probable cause be decided in the demanding, rather than in

the asylum State. There is the further fact that a ruling adverse to relator in Illinois is not binding on the courts of Michigan and the question of probable cause can be relitigated in that jurisdiction. On balance, we conclude that although it is highly desirable that the affidavit charging a crime in an extradition proceeding recite sufficient facts to show probable cause, we should adhere to our prior holding that the scope of inquiry in a *habeas corpus* proceeding to test the validity of a rendition warrant is limited to three questions: (1) is the accused substantially charged with a crime under the laws of the demanding State; (2) is the person in custody the person charged; (3) is he a fugitive from justice. *(People ex rel. Goldstein v. Babb (1955), 4 Ill.2d 483.)* We hold that even though the complaints, standing alone, do not show probable cause, they are affidavits made before a magistrate as required by section 3182 of Title 18 U.S.C.A. and section 3 of the Uniform Extradition Act, and are sufficient to support the rendition warrant. *People ex rel. Gates v. Mulcahy (1946), 392 Ill. 498.*

Relator contends next that the trial court erred in admitting the rendition warrant into evidence because there was no foundation laid as to its authenticity. The warrant bears the signature of the Governor and the Secretary of State, the seal of the State is affixed to it, and no further proof of genuineness is required. *Chicago & Alton R.R. Co. v. Keegan (1894), 152 Ill. 413.*

Relator contends next that the trial court erred in not granting his motion for a "directed verdict" after the respondent offered the rendition warrant in evidence and rested his case. In both criminal and civil cases a defendant waives his right to a directed verdict when he introduces evidence after his motion has been denied. *(People v. Washington (1962), 23 Ill.2d 546; Lynn v. Lynn (1961), 21 Ill.2d 131.)* Here relator introduced the Michigan requisition papers after the court denied his motion.

Relator contends next that the duty of examining extradition documents, determining their validity and issuing, or refusing to issue a rendition warrant, "devolves on the Governor personally and the power cannot be delegated." He argues that the court erred in not permitting his counsel to prove that the papers were examined and the decision made, not by the Governor, but by an administrative assistant. The rendition warrant signed by the Governor recites that the Michigan papers were laid before him and that he is satisfied that Michael Kubala is a fugitive from justice, has fled from the State of Michigan and has taken refuge in this State. These recitations make a *prima facie* showing that the Governor examined the requisition papers and issued the warrant. (See *People v. Williams (1964), 31 Ill.2d 160.*) The matters set forth in relator's offer of proof would not have shown these recitals to be untrue.

Relator also argues that the demand from the Governor of Michigan fails to allege that Kubala was in the State of Michigan at the time the crime was committed. A relator is not entitled to discharge as long as the requisition papers, considered together, establish that the warrant of the Governor of this State was legal and justified. *(People ex rel. Hackler v. Lohman (1969), 17 Ill.2d 78.)* The supporting papers show that relator was in Michigan at the time the crime was committed.

It is finally argued that the Michigan statute under which the relator is charged is unconstitutional. We will not consider the constitutionality of the statute upon which the demanding State's charge is based. *People ex rel. Gilbert v. Babb (1953), 415 Ill. 349.*

The order of the circuit court of Cook County is affirmed.

*Order affirmed.*