**UNITED STATES of America ex rel. Edward CURTIS, Petitioner,**

v.

**PEOPLE OF the STATE OF ILLINOIS and John J. Twomey, Warden, Respondents.**

No. 74–1559.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1975.

Decided July 11, 1975.

Certiorari Denied Dec. 8, 1975.
See 96 S.Ct. 465.

Daniel R. Murray, Jerold S. Solovy, Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen., Robert E. Davy, Asst. Atty. Gen., Chicago, Ill., for respondents.

Before CLARK, Associate Justice,* and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal from the dismissal of a state prisoner's petition for habeas corpus.

Three issues are presented for review:

1) Whether the petitioner was denied his statutory right to assistance of counsel at his post-conviction hearing in violation of the due process and equal protection clauses of the Fourteenth Amendment.

2) Whether the district court should have held an evidentiary hearing on the petitioner's allegation that the state suppressed evidence which might have exculpated him.

3) Whether the Illinois waiver rule, whereby the defendant waives error in the denial of a motion for a directed verdict at the close of the government's case if he presents evidence on his own behalf, imposed an impermissible burden on the petitioner's constitutional privilege against self-incrimination and violated his rights under the due process clause of the Fourteenth Amendment.

Early in the morning of January 11, 1967, a Moline, Illinois, policeman received a call that someone had broken into the Universal Cleaners. Upon arrival the officer heard a noise like a hammer hitting the safe. The safe was not in its usual place by the big front window. Help was summoned and arrived promptly. Policemen were stationed around the area. One of the policemen pushed open the door and four policemen entered. A man identified as the defendant was found hiding under a clothes rack in a corner of the building. Lying beside the defendant was a ten-

* Associate Justice Tom C. Clark (Retired) of the Supreme Court of the United States is sitting by designation.

pound sledge hammer and a forty-inch crow bar. The defendant was taken into custody. Five policemen, including three of those who had first entered, testified in the state burglary trial to the events of the evening. The defendant was found guilty. Upon appeal, the conviction was affirmed. *People v. Curtis,* 90 Ill.App.2d 231, 232 N.E.2d 457 (1967).

In view of the overwhelming evidence of guilt it would appear that the case might well be a strong candidate for harmless error disposition. However, this court having granted a certificate of probable cause, we will address the issues raised.

### I. Right to Counsel

On December 31, 1968, petitioner filed a *pro se* petition as an indigent person under the Illinois Post Conviction Hearing Act, Ill.Rev.Stat. ch. 38, § 122–1 *et seq.* The public defender who was appointed to represent petitioner, wrote him informing him of representation, explaining the constitutional scope of post-conviction review, and requesting a copy of petitioner's transcript, which he believed petitioner possessed due to extensive quotations in the *pro se* petition and because of a statement from prior counsel. Petitioner responded to the effect that he and the public defender were incompatible, that he did not have a complete transcript, and that he could not send the transcript or other evidence because he trusted no one. He outlined constitutional issues he believed to be involved. No further communication occurred between the petitioner and the public defender.

At the post-conviction hearing, the public defender, after outlining these communications, stated that he had gone through the rather voluminous petition, had tried to find constitutional issues, but could not in good faith find such issues. He did not see how he could continue to represent the defendant or amend the petition since he did not have the record. The state's attorney argued that the petition should be dismissed because the petition stated mere conclu-

sions and raised only matters which either were ruled on or could have been ruled on in the direct appeal. Finding that the defendant's various requests for relief did not state a substantial denial of any constitutional rights, the state court dismissed the petition.

With the assistance of other appointed counsel, petitioner appealed this dismissal to the Illinois Supreme Court which affirmed. *People v. Curtis,* 48 Ill.2d 25, 268 N.E.2d 29 (1971).

Petitioner concedes that he has no constitutional right to counsel in post-conviction hearings. See *McCartney v. United States,* 311 F.2d 475 (7th Cir. 1963), *cert. denied,* 374 U.S. 848, 83 S.Ct. 1910, 10 L.Ed.2d 1068; *Day v. United States,* 428 F.2d 1193 (8th Cir. 1970). Petitioner also concedes that a defendant cannot claim inadequate representation by counsel when he refused to cooperate with appointed counsel. See *Shaw v. United States,* 403 F.2d 528 (8th Cir. 1968). Nevertheless, petitioner argues that when a right is given by a state legislature, even though it is not a right guaranteed by the federal Constitution, the arbitrary denial of that right violates the Fourteenth Amendment. The state admits this as a general proposition of law, see *United States ex rel. Walker v. Twomey,* 484 F.2d 874 (7th Cir. 1973); *United States ex rel. Keating v. Bensinger,* 322 F.Supp. 784, 786 (N.D.Ill. 1971), but argues that in a habeas case the burden is on the convicted defendant to show that the state court has acted in an arbitrary fashion and a presumption of regularity should attend all decisions of state courts, see *United States ex rel. Walker v. Twomey, supra,* and that mere error of judgment entered by a state court having jurisdiction over the parties and subject matter does not raise a federal question under the Constitution, see *Chance v. County Board of School Trustees of McHenry County, Illinois,* 332 F.2d 971 (7th Cir. 1964).

Petitioner argues that Illinois has adopted the federal standards for judging adequacy of counsel in post-convic-

tion proceedings. Petitioner relies on *People v. Belville*, 94 Ill.App.2d 286, 236 N.E.2d 760 (1968). In that case the Illinois appellate court held that the representation in that case was inadequate because it felt bound by *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in that post-conviction review proceedings were an integral part of review procedure. *Anders* by its terms applies only to direct appeals where there is a right to counsel. All agree in this case that there is no right to counsel in post-conviction hearings except as provided by state statute. Illinois need not grant *Anders* rights to petitioners under its post-conviction review act, and Illinois has held since *Belville* that they do not attach. *People v. Townsel*, 14 Ill.App.3d 105, 302 N.E.2d 213 (1973) (citing an unpublished decision of the Illinois Supreme Court). Petitioner also argues that federal standards of waiver of counsel apply citing *Cox v. Burke*, 361 F.2d 183 (7th Cir. 1966), *cert. denied*, 385 U.S. 939, 87 S.Ct. 304, 17 L.Ed.2d 218 but due process only forbids the state from acting in an arbitrary or capricious manner or from acting on an impermissible basis.

We need not speculate regarding Illinois standards as applied to this case because the highest court of that state, before which petitioner was represented by counsel, held that petitioner's actions were sufficient to waive the right to counsel. Petitioner's letter is clearly open to that interpretation so we decline to hold that the Illinois court was acting in an arbitrary or capricious manner in so finding. Petitioner argues that the state court ignored the standards of representation provided in the Supreme Court Rules, Ill.Rev.Stat. ch. 110A, § 651 et seq., but we do not construe these sections as mandating procedures which are precluded by the petitioner's own actions which thwart their use.

Petitioner argues that the state was acting on an impermissible basis because since it had granted a defendant the right to assistance of counsel at a post-conviction hearing, it must do so in a way that does not discriminate on the basis of poverty. According to petitioner's counsel "[i]f petitioner was to be on the same footing before the law as those not dependent on appointed counsel, as the Equal Protection Clause demands, he should have been accorded the same rights, including that of effective assistance of counsel." Therefore, he concludes that the court should have appointed substitute counsel because retained counsel would have represented petitioner more effectively.

The matter of equal protection was averted to in the context of counsel in state discretionary appeals in *Ross v. Moffitt*, 417 U.S. 600, 611–12, 94 S.Ct. 2437, 2444–2445, 41 L.Ed.2d 341 (1974):

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed without doing violence to principles recognized in other decisions of this Court. The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' *San Antonio Independent School District v. Rodriquez*, 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973), nor does it require the State to 'equalize economic conditions.' *Griffin v. Illinois, supra*, 351 U.S. [12] at 23, 76 S.Ct. [585] at 592, 100 L.Ed. 891 (Frankfurter, J., concurring). It does require that the state appellate system be 'free of unreasoned distinctions,' *Rinaldi v. Yeager*, 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966), and that indigents have an adequate opportunity to present their claims fairly within the adversarial system. *Griffin v. Illinois, supra; Draper v. Washington, supra* [372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899] (1963)." (Footnote omitted.)

We agree with the Supreme Court of Illinois that upon the facts of this case the petitioner cannot complain of "possible inadequacy of representation which is attributable to his own deliberate conduct." 268 N.E.2d at 32.

Our conclusion is strengthened by the fact that on this issue we are not dealing with claimed constitutional deprivations which caused or contributed to a guilty conviction. Here we are dealing with a claim that because of inadequate representation in a post-conviction proceeding there was a denial of proper consideration of the alleged constitutional deprivations. Since the defendant was before the federal district court and presumably was unhampered in raising all constitutional issues which had been raised in exhausting post-conviction remedies in the state court, we fail to see any ultimate constitutional deprivation. We then turn to the other contentions of the present appeal which, by hypothesis, were necessarily those which he claims were not properly presented in the state court because of inadequate representation.

## II. Evidentiary Hearing

The underlying basis for the claim that the petitioner was improperly denied an evidentiary hearing by the district court is that the state suppressed material evidence favorable to the petitioner in violation of the principle expressed in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence in question was, according to the petitioner, a fingerprint report made by the Illinois Bureau of Criminal Identification and Investigation showing a fingerprint on the sledge hammer other than that of the petitioner but not petitioner's fingerprints.

■ Relying upon *Wilson v. Phend,* 417 F.2d 1197 (7th Cir. 1969), the petitioner argues that where a prisoner's habeas petition is dismissed without requiring the respondent to answer, the allegations must be deemed true for the present purposes and that, in any event, the *pro se* allegations must be liberally construed. These arguments as general propositions of law, of course, are true. However, in the present case, following an earlier summary dismissal, the cause was remanded by this court for further proceedings during which the original trial court transcript was filed and the state filed a motion to dismiss with supporting memorandum. Looking at the petition with the required liberality, the allegation in question is purely conclusionary in nature: "The state supressed a fingerprint report that proved petitioner did not commit this burglary and proves perjury by other state witnesses. The state lied and cheated its way to a conviction in that, it would ignore certain facts before a jury and then change the story in the appellate court."

We are unable to find any factual support in the record that the fingerprint report ever existed. Apparently more than a year after the Illinois Appellate Court affirmed the conviction, the petitioner first requested a copy of the alleged report. His trial counsel, however, had thought of the possibility of the existence of a fingerprint report because he questioned several state witnesses as to whether one was made. Each denied having any knowledge of such a report. The state's attorney arguing this appeal was asked by this court as to what efforts had been made to determine whether a fingerprint report existed. He was unaware of any such report.

■ However, even if we assume *arguendo* that the Bureau did make a report to the effect that someone's fingerprints were on the sledge hammer but that the defendant's were not and that the state refrained from informing the defendant of this notwithstanding no request had been made, assumptions for which we find no support in the record, nevertheless, we cannot conceive this aggregation of facts to be of the constitutional stature which would require the granting of a habeas petition.

■ There was testimony that some of the officers handled the tools with their bare hands. It is common knowledge that a standard police investigatory technique is looking for fingerprints. Assuming *arguendo* that the police would feel some compulsion to do this when the tools were found immediately adjacent to the defendant inside the burglarized

722

plant, defense counsel was clearly in a position to argue with as much force as the overwhelming evidence of the police would permit, while supporting his client's version that he was someplace else and that the police had just made up the version to which they testified, that everyone knows that police look for fingerprints and if they had found any on these tools you, the jury, would certainly have been told about it. In *United States ex rel. Raymond v. Illinois*, 455 F.2d 62 (7th Cir. 1972), *cert. denied*, 409 U.S. 885, 93 S.Ct. 103, 34 L.Ed.2d 141, this court held in a close case that the evidence which admittedly did exist and which admittedly had not been made known to defense counsel was sufficiently exculpatory under the particular circumstances of that case to require reversal of the denial of the petition. Here the evidence, if there was any, would have been so without probative value as to preclude its non-revelation as being the basis for reversal. The prosecution need not make a complete and detailed accounting to the defense of all police investigatory work on a case. *Moore v. Illinois*, 408 U.S. 786 (1972).

■ Petitioner argues that the Supreme Court's holding in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), compels us to order an evidentiary hearing. The Court in *Townsend* laid down standards to determine when an evidentiary hearing is required, but also held that before a court should look at those standards, it should determine whether the facts alleged if proved would entitle the petitioner to relief. Since we hold they would not, no evidentiary hearing was required.

### III.   Waiver

■ Under the waiver rule when a motion by the defense for a directed verdict is denied at the close of the state's evidence, the defendant waives any error made by the court in denying the motion if he introduces evidence on his own behalf. *People ex rel. Kubala v. Woods,* 52 Ill.2d 48, 284 N.E.2d 286 (1972); *United States v. Tubbs,* 461 F.2d 43, 45 (7th Cir. 1972), *cert. denied,* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 124.

Petitioner argues that criminal and civil cases should be distinguished and that the waiver rule should not be applied in criminal cases because it violates the constitutional privilege against self-incrimination and the due process requirement of fundamental fairness—considerations which do not apply in civil cases in which the waiver rule originated. He principally relies on *Cephus v. United States,* 117 U.S.App.D.C. 15, 324 F.2d 893 (1963), although he concedes that the weight of authority is against him. In *Cephus* the court held that the application of the waiver rule was improper under the circumstances of that case—the defendant in seeking to explain a co-defendant's testimony introduced evidence which tended to cure a deficiency in the government's case. The court expressly declined to question the waiver doctrine in criminal cases generally.

■ Even if it had been demonstrated to us, which it has not been, that the *Cephus* situation existed here, the fact remains that the overwhelming evidence establishing the guilt which the state had introduced would have under no conceivable view of the law established a basis for a directed verdict at the conclusion of the state's evidence. Waiver contemplates that something is being waived. Here there was nothing.

If it were necessary to reach the issue, we would decline to follow *Cephus* on the facts of this case. Curtis by putting in testimony supplied no missing link for the state's case.

For the reasons set out herein, the judgment of dismissal is

Affirmed.