UNITED STATES of America, ex rel.
Patrick McINERY, Petitioner,

v.

John SHELLEY, Sheriff of Will County,
Illinois, Respondent,

and

Tyrone Fahner, Attorney General * of
the State of Illinois.

No. 81 C 2016.

United States District Court,
N. D. Illinois, E. D.

Oct. 6, 1981.

Charles W. Hoffman, Asst. State Appellate Defender, Ottawa, Ill., for petitioner.

Thomas C. Crooks, Asst. Atty. Gen., Chicago, Ill., John Urban, Asst. State's Atty. of Will County, Joliet, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Petitioner Patrick McInery ("petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). Petitioner currently is in the custody of John Shelley, Sheriff of Will County, Illinois ("respondent"), pending execution of an order of extradition to Mississippi. Petitioner alleges that his sixth and fourteenth amendment rights to due process and speedy trial were violated by the three-year delay between the issuance of an extradition warrant by the Governor of Illinois and the initiation of extradition proceedings against him. This matter is presently before the Court on the parties' cross-motions for summary judgment pursuant to Rule

* Tyrone Fahner was dropped as a respondent by order of May 22, 1981, pursuant to Rule 2(a) of the rules governing § 2254 cases.

56(b) of the Federal Rules of Civil Procedure.

The standard to be used in deciding a motion for summary judgment is that the "party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor." *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979). All pleadings and supporting papers must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Stringer v. Rowe*, 616 F.2d 993, 999 (7th Cir. 1980). The Court finds, for reasons set out below, that the petition for a writ of habeas corpus must be denied since petitioner does not challenge his extradition per se and he cannot raise the alleged violation of his right to a speedy trial before this Court at this time.

The facts of this case are not disputed. On May 21, 1976, petitioner was indicted in Lee County, Mississippi, for the offense of aggravated assault, burglary, and attempted rape. On September 9, 1976, petitioner escaped from the Lee County Jail, where he was apparently awaiting trial, and fled to Illinois. As of December 23, 1976, the Lee County District Attorney had been informed that petitioner was incarcerated in Cook County, Illinois, pending transfer to the Stateville Penitentiary subsequent to an Illinois conviction.[1] On January 7, 1977, the Governor of Mississippi formally requested that the Governor of Illinois order petitioner's extradition to Mississippi. The Governor of Illinois complied with this request,[2] and on January 26, 1977, issued an extradition warrant authorizing petitioner's arrest

in Illinois. The warrant commanded the arresting officer to secure petitioner pending a hearing before the circuit court of the county in which he is apprehended.

On November 14, 1979, petitioner was charged by information in the Circuit Court of Will County, Illinois, as a "fugitive from justice" pursuant to Illinois Revised Statute 1977, chapter 60, section 30.[3] On November 19, 1979, he was brought from the Stateville Penitentiary to appear before the Circuit Court of Will County, where he was served with a copy of the fugitive information. On January 25, 1980, petitioner filed a petition in Illinois state court for writ of habeas corpus, challenging the legality of his detention pursuant to the fugitive information. At that time, he was incarcerated in the Will County Jail pending disposition of the information, having been released on parole from Stateville on January 21, 1980. The petition alleged, *inter alia*, that the petitioner's right to due process of law had been violated by the failure of Illinois authorities to initiate extradition proceedings until November 14, 1979, almost three years after the Governor of Illinois had issued the warrant for the petitioner's arrest on January 26, 1977. The State responded that the rendition warrant was not stale since petitioner had been incarcerated since its issuance pursuant to an Illinois conviction. The State further asserted that the constitutional claims raised by the petitioner were beyond the limited scope of the habeas corpus proceeding.

The matter proceeded to hearing in the Circuit Court of Will County on February 7, 1980. On March 4, 1980, the court denied the habeas corpus petition and ordered that

---

1. The record does not disclose what offense had been committed by petitioner in Illinois.

2. When a fugitive is incarcerated in Illinois subsequent to an Illinois conviction, the Governor of Illinois has the option of complying with the request for extradition or refusing to issue an extradition warrant pending completion of the fugitive's Illinois sentence. Ill.Rev.Stat., ch. 60 § 22 (1977).

3. There is no reason stated in the record to explain why the petitioner was not charged as a fugitive from justice until almost three years after the issuance of the extradition rendition warrant, despite knowledge by the authorities of petitioner's incarceration in Stateville Penitentiary at all relevant times. Similarly, the record is silent as to whether Mississippi repeated its demand for extradition of the petitioner during the three-year period.

petitioner be surrendered to the Mississippi authorities. Petitioner appealed to the Appellate Court of Illinois, Third Judicial District, and on April 10, 1980, the Appellate Court granted his motion to stay extradition pending the appeal. On appeal, petitioner claimed that his rights to due process and speedy trial were violated by the unexplained delay between issuance of the extradition rendition warrant and initiation of the extradition proceedings against him. On December 16, 1980, the Appellate Court, affirming the denial of habeas relief, decided that petitioner's right to a speedy trial in Mississippi had not been violated by any actions of Illinois officials. *People v. McInery*, 91 Ill.App.3d 68, 46 Ill.Dec. 122, 413 N.E.2d 876 (3d Dist. 1980). Petitioner sought leave to appeal to the Illinois Supreme Court, which was denied. Having exhausted his state remedies, petitioner now seeks habeas corpus relief in this Court.

 Petitioner's action to prevent his extradition to Mississippi is predicated upon an alleged violation of his constitutional right to a speedy trial by the inaction of officials of Illinois. Simply put, petitioner requests us to punish Mississippi for the alleged transgressions of Illinois authorities perpetrated after petitioner fled Mississippi to avoid prosecution.[4] Thus, assuming *arguendo* that petitioner's speedy trial allegation has merit, through an unlawful act of self-help, *i. e.*, escape from the Lee County Jail, he will have placed himself beyond the reach of the Mississippi judicial system. As discussed below, however, regardless of the merit of petitioner's speedy trial claim, extradition proceedings are not subject to judicial review in the asylum state upon constitutional grounds that are generally appropriate only when raised as a defense to the criminal prosecution in the demanding state.[5]

Article Four of the United States Constitution provides that

A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

---

**4.** A finding of a violation of his right to speedy trial will deprive Mississippi of its right to try petitioner. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker*, the United States Supreme Court said that if a court finds that a defendant has suffered a deprivation of his right to speedy trial, the indictment must be dismissed. If the defendant's speedy trial right is asserted and vindicated subsequent to conviction and incarceration, *the conviction must be set aside; a lesser sentence or parole is inappropriate. Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

**5.** By contrast, petitioner cites several cases wherein a conviction or indictment of a fugitive was set aside on speedy trial grounds where the delays were caused by action of the *demanding* state and not, as is alleged here, by any footdragging in the *asylum* state. *See, e. g., Moore v. Arizona*, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *People v. Bryarly*, 23 Ill.2d 313, 178 N.E.2d 326 (1961).
*In Application of Caudill*, 352 P.2d 926 (Okl.Cr. 1960), the only case in point relied upon by

petitioner, in which the claimed delay was attributable to the asylum state, the petitioner did not allege a violation of his right to speedy trial. In *Caudill*, the court considered whether a sheriff had the right to temporarily delay by "pocket veto" a governor's *extradition warrant* until a local sentence was served to completion. The court held that the sheriff's act in holding the petitioner after the issuance of the warrant was an impermissible invasion of executive power. Although the *Caudill* court strongly condemned the sheriff's actions, the court ordered that the fugitive's extradition be effected immediately—and not that the extradition be stopped. Similarly, in *Lott v. Heyd*, 315 F.2d 350 (5th Cir. 1963), a fugitive sought habeas corpus relief claiming that Louisiana, the asylum state, had held him beyond the statutory period permitted to await extradition to Mississippi, the demanding state. The court said that even if the appellant had been held for a time without legal authority, "no federally protected rights were violated and to hold that Louisiana's alleged misbehavior deprived Mississippi of its Constitutional right to the fugitive would amount to allowing the State of Louisiana to amend the Constitution." 315 F.2d at 351. The appellant was ordered to be extradited.

Art. IV, § 2, ch. 2.[6] *Kentucky v. Dennison,* 65 U.S. (24 How) 66, 109, 16 L.Ed. 717, 729 (1860), the Supreme Court described a state's duty to extradite fugitives as stemming from a "compact entered into with the other states when it adopted the Constitution of the United States." Subsequent decisions have made it clear that as the purpose of the Extradition Clause is to facilitate the speedy trial of offenders in the jurisdiction in which the alleged offense was committed, so that a state is precluded from offering a safe haven to fugitives from justice of another state upon proper demand for their return. *Biddinger v. Commissioner of Police,* 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917); *U.S. ex rel. Jackson v. Meyering,* 54 F.2d 621 (7th Cir.), *cert. denied,* 286 U.S. 542, 52 S.Ct. 498, 76 L.Ed. 1280 (1932).

The right of extradition has long been recognized as belonging to the demanding state and not to the fugitive.[7] *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), *rehearing denied,* 343 U.S. 937, 72 S.Ct. 768, 96 L.Ed. 1344; *U.S. ex rel. Fort v. Meiszner,* 319 F.Supp. 693 (N.D.Ill.1970). In fact, the Supreme Court has held that there is no violation of a criminal defendant's constitutional rights when a prosecuting state bypasses the asylum state's extradition procedure by "kidnapping" the defendant from the asylum state. *Ker v. Illinois, supra, Frisbie v. Collins, supra.* Thus, in order to effectuate the purpose of the Extradition Clause—the expeditious trial of offenders—and to protect the constitutional rights of a demanding state, extradition is a summary and mandatory executive proceeding. *Biddinger v. Commissioner of Police, supra; U.S. ex rel. Jackson v. Meyering, supra.*

The precise scope of the extradition proceeding recently was restated by the United States Supreme Court in *Michigan v. Doran,* 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978).[8] In *Doran,* a fugitive from Arizona who had fled to Michigan challenged the validity of a Michigan order extraditing him to Arizona. Seeking habeas corpus relief, the petitioner claimed that Arizona had failed to show a factual basis for its finding of probable cause to support its charge of theft and, therefore, that extradition was invalid. The Michigan Court of Appeals twice denied the petitioner a writ of habeas corpus. *People v. Doran,* Nos. 28507 (May 4, 1976) and 30516 (November 22, 1976). The Michigan Supreme Court reversed, however, holding that because extradition results in a significant impairment of liberty, such impairment is justified only upon a proper showing that there is probable cause to believe that the fugitive had committed

---

**6.** 18 U.S.C. § 3182 provides the implementing language as follows:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled *shall* cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and *shall* cause the fugitive to be delivered to such agent when he shall appear. (Emphasis in original.)

**7.** The Interstate Agreement on Detainers Act, 18 U.S.C.App. (1970), was passed, in part, to provide, where the Act is applicable, fugitives with rights not afforded them under the extradition scheme. *Adams v. Cuyler,* 592 F.2d 720 (3d Cir. 1979). Specifically, the Detainer Act provides that a person shall be brought to trial within 180 days after he has delivered to the prosecutor and court of the jurisdiction a written notice of place of his imprisonment and a request for final disposition of indictment, information or complaint. The instant case does not proceed pursuant to the Detainer Act. Mississippi is not a party to the Act, and petitioner did not demand that he be brought to trial in Mississippi during the time that he was incarcerated in Illinois.

**8.** *See also Pacileo v. Walker,* 449 U.S. 86, 101 S.Ct. 308, 66 L.Ed.2d 304 (1980), *rehearing denied,* 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981).

the crime charged. *In re Doran*, 401 Mich. 235, 258 N.W.2d 406 (1977). In effect, the Michigan Supreme Court concluded that a court in an asylum state could review the action of its governor in issuing an extradition warrant and, in the process, inquire into the factual basis for the finding of probable cause which accompanies the request from the demanding state. 401 Mich. at 240–42, 250 N.W.2d at 408–09.

The United States Supreme Court, however, did not agree. The Court reaffirmed that the nature of the extradition proceeding is exclusively summary and mandatory:

> While courts will always endeavor to see that no such attempted wrong [persons falsifying information to prosecutors or prosecutors acting wantonly or ignorantly] is successful, on the other hand, care must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt.

439 U.S. at 288, 99 S.Ct. at 535, quoting *In re Strauss*, 197 U.S. 324, 332–33, 25 S.Ct. 535, 537, 49 L.Ed. 774 (1905). Thus, the Court asserted that whatever the scope of discretion vested in the governor of the asylum state, the courts of that state are bound by the Extradition Clause of the Constitution. According to the Court, a governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. Once the governor has issued an order of extradition, the review permitted a court considering release of the fugitive on habeas corpus is narrowly circumscribed:

> "A court . . . can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

439 U.S. at 289, 99 S.Ct. at 535. The Court found that "[t]o allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purpose of the summary procedures outlined by Art. IV, § 2." *Id.* 439 U.S. at 290–91, 99 S.Ct. at 536 (citations omitted). *See also U. S. ex rel. Jackson v. Meyering, supra.*

A corollary to the principle underlying the strict rules for review of the extradition hearing set forth in *Doran* is that the asylum state is an inappropriate forum in which to raise constitutional questions that generally are appropriate only when raised as a defense to the underlying criminal charge. *Sweeney v. Woodall*, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114 (1952), *rehearing denied*, 344 U.S. 916, 73 S.Ct. 332, 97 L.Ed. 706 (1953); *Drew v. Thaw*, 235 U.S. 432, 35 S.Ct. 137, 59 L.Ed. 302 (1911). Rather, such claims must be raised initially in the courts of the demanding state where an appropriate remedy may be fashioned. *Sweeney v. Woodall, supra; Dye v. Johnson*, 338 U.S. 864, 70 S.Ct. 146, 94 L.Ed. 530 (1949). The presumption is that justice is available equally in every court in the land. Therefore, in consideration of the summary nature of the extradition process and the availability of another forum in which a habeas corpus petitioner may test the claimed unconstitutionality of his prospective treatment, it would be premature to allow him to litigate the constitutionality of his prospective treatment in the asylum state. *Id.*

In *State ex rel. Garner v. Gray*, 59 Wis.2d 323, 208 N.W.2d 161 (1973), the petitioner contended that actions of officials of both the demanding state (Illinois) and the asylum state (Wisconsin) resulted in his being denied a speedy trial.[9] The claimed abuse was the asylum state's failure to inform petitioner of his right to a speedy trial in the demanding state from which he had

---

**9.** The *Garner* case proceeded pursuant to the Agreement on Detainers Act. Wis.Stat. § 976.-05(1), Art. III. Although the case was decided in reference to the Detainer Act, the *Garner*

court found that its decision was "in accord with the vast majority of cases which have arisen under the extradition statutes." 208 N.W.2d at 164.

fled. Indeed, the section regarding speedy trial had been crossed out on the form given to the petitioner by authorities in the asylum state. Nonetheless, the Supreme Court of Wisconsin determined that the asylum state was precluded from determining whether the speedy trial rule or other constitutional rights had been violated. Rather, the court stated that vindication of constitutional rights would be proper only when raised in the prosecuting forum.

Similarly, in *Scott v. Greco*, 76 Civ. 5466, unpublished slip op. (S.D.N.Y., June 28, 1978), the petitioner was incarcerated in New York (asylum state) on an assault charge when a warrant was lodged against him as a fugitive from a charge of murder in Florida (demanding state). After an extradition order was entered and stayed, the petitioner sought habeas corpus relief in the United States District Court for the Southern District of New York. He claimed, *inter alia*, that he was denied effective assistance of counsel in the New York proceedings and that delays in that state's habeas corpus proceeding violated the due process clause and his right to a speedy trial in Florida. The court ruled that the petitioner's complaints of constitutional violations were not cognizable in a challenge to extradition. The court stated that "[l]ike any constitutional defense, this can be raised at trial in the demanding state." *Scott v. Greco, supra.*

■ Finally, in *People ex rel. Vasquez v. Pratt*, 24 Ill.App.3d 927, 322 N.E.2d 74 (1975), Vasquez claimed that he had been held in Illinois too long while awaiting requisition from the Governor of Michigan and orders of extradition from the Governor of Illinois and, therefore, that his right to a speedy trial was jeopardized. Vasquez had been arrested and detained in the Winnebago County, Illinois, jail pending the issuance of a fugitive warrant. Three days later the Governor of Illinois issued that warrant. The following day Vasquez appeared in court and was ordered held for seven days pending the filing of the requisition warrant from the Governor of Michigan. His commitment eventually was extended an-

other 90 days. On the 33rd day, the request from the Governor of Michigan was filed. Approximately one month later, the Governor of Illinois filed a rendition warrant. Thereafter, Vasquez sought habeas corpus relief. The Uniform Criminal Extradition Act (Ill.Rev.Stat.1963, ch. 60, §§ 32, 33, 34) requires that a fugitive may be committed for no longer than 30 days pending the issuance of an extradition rendition warrant and allows for a recommitment period not to exceed 60 days. In discussing the speedy trial claim, the Illinois Appellate Court dismissed the appellant's argument because, in the court's view, there is a critical difference between the nature of a criminal proceeding and an extradition proceeding. The court stated that evidentiary rules and constitutional principles of due process must be rigidly adhered to in the criminal trial since its purpose is to determine the guilt or innocence of the accused. Extradition, however, is a right which belongs to the demanding state. It contemplates only a summary and ministerial proceeding, the primary purpose of which is to return a fugitive to the demanding state so that he can stand trial. 322 N.E.2d at 77. Relying upon *People ex rel. Gummow v. Larson*, 35 Ill.2d 280, 220 N.E.2d 165 (1966), the *Vasquez* court found that the time period during which the accused may be committed does not run against the governor of the asylum state so that his failure to issue and serve a rendition warrant within statutory periods will prevent extradition. According to the court, "[t]his is to be contrasted with a criminal prosecution in which the failure to bring an accused to trial by a court having jurisdiction within 120 days ... forever bars the state from prosecuting that person for the offense." 322 N.E.2d at 77. The court stated that an action for habeas corpus relief would have been proper prior to service of the rendition warrant, while the appellant was held improperly. However, the court added, "once the rendition warrant has been filed issues relating to any delay in consummating the extradition proceedings become moot and absent any question as to the validity of the rendi-

tion warrant the realtor may be delivered to the demanding state." [10] *Id.*

■ A petitioner also is precluded from seeking "pre-trial" habeas corpus relief in a *federal* court in the asylum state on constitutional grounds by the doctrines of federalism and comity. Ordinarily a federal court should abstain from granting pre-trial habeas corpus relief, especially when such relief would result in the "derailment of a pending state proceeding." *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 491, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973); *United States ex rel. Bryant v. Shapp,* 423 F.Supp. 471 (D.Del.1976).

■ Although the extradition proceeding is a summary and mandatory procedure, a court in the asylum state may deny extradition where extraordinary circumstances exist. For example, in *People ex rel. Bowman v. Woods,* 46 Ill.2d 572, 264 N.E.2d 151 (1970), a case cited by both petitioner and respondent, the Illinois Supreme Court refused to order the extradition of a defendant to the demanding state although all the necessary papers and procedures were in order. Nonetheless, the *Bowman* court held that the demanding state had forfeited its right to extradition by an inordinate and unexplained delay—thirteen years—in effecting extradition of the fugitive. During that period, the fugitive was twice arrested in the asylum state (Illinois) pending the receipt of a warrant from the demanding state, and twice released when those warrants were not received. Although the *Bowman* court denied extradition, a speedy trial violation was neither claimed nor found. Subsequent to the court's decision, if Bowman happened to stray into the demanding state, that state remained free to bring him to trial. Of course, Bowman could have raised his speedy trial claim in the context of a subsequent criminal proceeding in the demanding state.

Another exception to the issuance of an order of extradition is where the minimal procedural requirements of extradition have not been followed. Before an individual can be extradicted, the governor of the asylum state and its courts must determine whether the extradition documents are in order, whether the petitioner has been charged with a crime in the demanding state, whether the petitioner is the person named in the request for extradition, and whether the petitioner is a fugitive. *People v. Doran, supra.* Failure to comply with these procedural safeguards prior to extradition can be challenged in a habeas corpus proceeding. *McBride v. Soos,* 594 F.2d 610 (7th Cir. 1979); *United States v. Meyering, supra; United States ex rel. Silver v. O'Brien,* 138 F.2d 217 (7th Cir. 1943), *cert. denied,* 321 U.S. 766, 64 S.Ct. 522, 88 L.Ed. 1062 (1944). In the case at bar, however, petitioner does not challenge the procedural regularities of Illinois' extradition procedure. Neither has he alleged any circumstances sufficiently extraordinary to permit Illinois to deny Mississippi its right to extradite the petitioner.

Extraordinary or special circumstances also may arise to permit a federal court to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court. Absent special circumstances, however, federal habeas corpus upon the motion of a state prisoner will never lie. *Ex Parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). Examples of "special circumstances" which can trigger federal habeas corpus, as cited by *Royall* are where the proceeding in the state court is void for want of jurisdiction or where bail was denied to the petitioner although reasonable bond was appropriate. The United States Supreme

---

**10.** Other cases in which courts have ruled that constitutional challenges cannot be raised before the courts of an asylum state during an extradition or habeas corpus hearing include *Sweeney v. Woodall, supra* (claim that imprisonment in the demanding state's correctional system is cruel and unusual punishment); *Biddinger v. Commissioner of Police, supra* (claim

that the statute of limits on the crime charged had run); *Michigan v. Doran, supra*; and *People ex rel. Kubala v. Woods,* 52 Ill.2d 48, 284 N.E.2d 286 (1972) (no probable cause for the original indictment); *United States ex rel. Tyler v. Henderson,* 453 F.2d 790 (5th Cir. 1971) (matter is res judicata).

Court reaffirmed this proposition, in dicta, in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973).[11] The record in the instant cause does not reveal any extraordinary circumstances that would permit us to consider the merits of a constitutional challenge to trial in Mississippi.

For the reasons set forth above, respondent's motion for summary judgment is granted, and petitioner's motion for summary judgment is denied.[12] It is so ordered.

11. In *Braden*, the petitioner was serving a sentence in Alabama (the asylum state). While incarcerated, he had unsuccessfully tried to secure his presence in Kentucky for trial on a three-year old Kentucky indictment. The specific issue considered in *Braden* was whether the petitioner could seek a writ of habeas in the District Court for the Western District of Kentucky (the federal district court for the indicting state) or whether he had to bring the action in Alabama where he was physically in custody. The Supreme Court held that the claim was cognizable in Kentucky, subsequent to exhaustion of state remedies, so long as the custodian can be reached by service of process. In cases where a petitioner is held in one state and the detainer lodged against him is attached in another state, the state in which the prisoner is confined acts as agent for the demanding state. 410 U.S. at 496–501, 93 S.Ct. at 1130–32.

Under the facts of *Braden*, it was clear that the petitioner had exhausted all available *state* court remedies for consideration of his constitutional claim and still had not been brought to trial. The *Braden* court emphasized, however, that the petitioner came to federal court not to foreclose a state prosecution, but to effect one. In the instant case, petitioner has not yet sought redress for his claimed violation of his right to speedy trial in the courts of Mississippi. He has, therefore, not yet satisfied that tenet of the exhaustion doctrine. Moreover, petitioner does not seek extradition but to prevent it and to bar Mississippi from adjudicating its outstanding charge against him.

12. Although we have denied his claim herein, petitioner, of course, has the option of instituting an action for damages pursuant to act Apr. 20, 1871, ch. 22, § 1, 17 Stat. 13, 42 U.S.C.A. § 1983, against the Illinois officials who allegedly delayed institution of extradition proceedings. *See, e. g., Crumley v. Snead*, 620 F.2d 481 (5th Cir. 1980); *McBride v. Soos*, 594 F.2d 610 (7th Cir. 1979). Our noting of this option, however, should not be construed as reflecting any view as to the likely success of such claim should it be pursued.